## Anonymous et al.[1] v. Nicholas Norton, Commissioner of Welfare

House, C. J., Loiselle, MacDonald, Bogdanski and Longo, Js.

[1] Upon the suggestion of the parties and in accordance with the spirit and intent of § 17-70 (b) of the General Statutes and § 405 of the Practice Book, it is ordered that the names of the children involved in this appeal shall not be disclosed and that the record, briefs and appendices shall not be distributed to the various libraries of the state by the Reporter of Judicial Decisions. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of this court.

Argued February 7—decision released May 6, 1975

*Michael J. Churgin,* with whom, on the brief, were *Stephen Wizner* and *Dennis E. Curtis,* for the appellants (plaintiffs).

*Mary P. Ryan,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellee (defendant).

*Richard H. Kosinski,* for the dependent children.

BOGDANSKI, J. This appeal concerns an order of the Juvenile Court terminating the parental rights of the plaintiffs with respect to their two infant children. From that order, the plaintiffs appealed to the Superior Court under the provisions of § 17-70 of the General Statutes. After reviewing the record of the proceedings in the Juvenile Court, the Superior Court found the issues for the defendant welfare commissioner and dismissed the appeal. From that judgment, the plaintiffs have appealed to this court, assigning error in the court's conclusions.

We first address ourselves to the defendant's assertion that the record is insufficient for proper

review by this court. Citing *Martin* v. *Connecticut Personnel Commissioner,* 167 Conn. 377, 379, 355 A.2d 256, the defendant claims that the plaintiffs should have requested a finding in both their appeal to the Superior Court and their appeal to this court, and that without a finding of facts on which the Juvenile Court and the Superior Court based their conclusions, this court is in no position to do other than affirm the judgment of the Superior Court. A review of appellate procedure set forth in the Practice Book disposes of that argument. Section 404 of the Practice Book has, since 1971, provided that "[t]he hearing on appeal shall be upon the record of the proceedings in the juvenile court. The superior court shall review the certified record of those proceedings and determine whether or not the juvenile court has found facts without evidence or has reached conclusions which cannot be reasonably derived from the facts found or the law applicable thereto or both, or has acted illegally or arbitrarily." See General Statutes § 17-70 (b). The record of the proceedings before the Juvenile Court was, therefore, properly before the Superior Court, and it was solely upon the basis of that record that the appeal was decided. We, in turn, review the action of the Superior Court and may properly consult its memorandum of decision to ascertain the conclusions on which it based its judgment; *A.P. & W. Holding Corporation* v. *Planning & Zoning Board,* 167 Conn. 182, 187, 355 A.2d 91; and in testing those conclusions we review the facts in the record submitted to us pursuant to Practice Book § 645 as it may be supplemented by any relevant portions of the Juvenile Court record which are printed in the appendices to the briefs. Practice Book §§ 714–716.

In this appeal, the parents have relied on the extensive appendix to the brief filed on behalf of their two children. That appendix, combined with the record, is sufficient for our review of the assigned errors. The defendant has also filed an appendix of even greater length, composed of over fifty pages of verbatim testimony of the proceedings in the Juvenile Court. That testimony quoted in the defendant's appendix, however, has no sequence or continuity, with excerpts beginning and ending in the middle of sentences. It is sufficient to point out that the resulting confusion greatly complicates our review of this appeal, and that Practice Book § 720 requires that evidence be stated in appendices in narrative form whenever possible without unnecessary or repetitious printing of testimony.

The plaintiffs have assigned error in the Superior Court's conclusion that the order of the Juvenile Court to terminate parental rights was reasonably derived from the legally admissible evidence before it. Specifically, the plaintiffs complain that the Juvenile Court order was based (1) on voluminous medical records concerning the mental health of the parents, which records were improperly admitted into evidence, and (2) on a medical report furnished by a court-appointed psychiatrist, which report was not admitted into evidence.

The defendant in his brief and the Superior Court in its memorandum of decision rely primarily on the premise that a Juvenile Court proceeding is essentially civil in nature and that certain informalities in procedure are constitutionally permissible. *In re Appeal of Bailey*, 158 Conn. 439, 445, 262 A.2d 177; *Cinque* v. *Boyd*, 99 Conn. 70, 84, 121 A. 678.

While that proposition cannot be challenged as a general statement of the law, it cannot justify procedural irregularities in so serious a matter as the termination of parental rights. The termination of parental rights is defined as "the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and his parent . . . ." General Statutes § 17-32a (e) (Rev. to 1972).[2] Although that ultimate interference by the state in the parent-child relationship may be required under certain circumstances, the natural rights of parents in their children "undeniably warrants deference and, absent a powerful countervailing interest, protection." *Stanley* v. *Illinois,* 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551; see *In re Appeal of Kindis,* 162 Conn. 239, 240, 294 A.2d 316; *Cinque* v. *Boyd,* supra, 82. "It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements.' *Kovacs* v. *Cooper,* 336 U.S. 77, 95 [69 S. Ct. 448, 93 L. Ed. 513] (1949) (Frankfurter, J., concurring)." *Stanley* v. *Illinois,* supra. Therefore, laxity in procedural safeguards cannot be swept away by mere reference to the so-called "informalities" of Juvenile Court procedure.

The defendant filed petitions for termination of the plaintiffs' parental rights in their two children on May 24, 1973, alleging that the "parents have

[2] Section 17-32a was subsequently repealed with new language substituted by Public Act No. 73-146 § 20, Public Act No. 73-625 § 2, and Public Act No. 74-164 § 18. The latest definition of "termination of parental rights" is found in § 45-61b (g) of the General Statutes (Rev. to 1975), and is substantially similar to that quoted in the body of this opinion.

been or are unable by reason of a continuing physical or mental condition to offer the care necessary for the child[ren] and there are reasonable grounds to believe that such condition will exist for an indeterminate period of time." See General Statutes § 17-43a (c) (Rev. to 1972).[3] The parents received notice of the petitions and were represented by counsel at all subsequent proceedings.

In October of 1973, hearings were held on the defendant's petitions. During those hearings the defendant offered into evidence certain hospital records concerning the parents' prior hospitalization for mental illnesses. The parents objected to the admission of those records on the ground that the psychiatrist who prepared those reports was not present for examination in violation of Rule 17-7 of the Juvenile Court, now § 1119 (6) of the Practice Book, which states that "[p]roperly validated reports of physicians and clinical tests, both psychological and physical, may be admitted by the court if, in its judgment, the adjudication does not pivot around the contents of the report in question. Where such a report appears likely to be determinative of the decision, its authors should be present for proper examination." The Juvenile Court overruled the parents' objection and admitted the records as "hospital records under the regular hospital records rule." See General Statutes § 52-180.

As already noted, the petition alleged that the parents were unable to provide necessary care for their children because of a continuing mental condition. Thus, the mental health of the parents was a pivotal issue and the hospital reports in question

---

[3] Section 17-43a was subsequently repealed with new language substituted by Public Act No. 73-156 § 4, and Public Act No. 74-164 § 3. See § 17-43a (a) (3) (Rev. to 1975).

might arguably have been determinative of the decision. Moreover, the parties and the court did not consider the applicability of the statutory privilege of confidentiality of communications and records of a patient's mental condition. General Statutes §§ 52-146d, 52-146e. Since the parents made timely objection to their admission, they cannot be deemed either to have consented to the disclosure of those records or to have waived their privilege. See *State v. Vennard,* 159 Conn. 385, 406, 270 A.2d 837, cert. denied, 400 U.S. 1011, 91 S. Ct. 576, 27 L. Ed. 2d 625. We therefore conclude that the records in question were not admissible as business entries under § 52-180 of the General Statutes, and that the Juvenile Court erred in receiving them in evidence.

The further claim is made that the Juvenile Court based its decision on a medical report which was not admitted into evidence. The appendices to the briefs disclose that, prior to the hearing on October 15, 1973, the Juvenile Court ordered that the parents be examined by a psychiatrist. After examining the parents the court-appointed psychiatrist prepared a medical report concerning both parents. That report, however, was never introduced into evidence. In its memorandum of decision, the Juvenile Court made reference to that report and quoted directly from it. Since the report was never made a part of the record, it was error for the Juvenile Court to use it in any way to support its conclusions.

It is thus clear that the order of termination could not properly have been based on either the past hospital records of the parents' mental illnesses or the report of the court-appointed psychiatrist. If those documents were the source of the underlying facts on which the Juvenile Court

based its conclusions, the errors would be harmful. We must, therefore, examine the other evidence which was before the Juvenile Court.

The appendices disclose that the court-appointed psychiatrist testified as to the results of his examination of the parents, notwithstanding the fact that his report was never admitted into evidence. He was further subjected to cross-examination by counsel for the parents. He testified that both parents were suffering from chronic schizophrenia; that while both parents would like to care for their children, they were unable to do so; that the nature of their illness was quite severe, requiring an intensive, structured hospital setting for some time; and that their conditions would continue for an indeterminate period of time.

Other evidence before the court included the unchallenged testimony of a social worker who had supervised the plaintiffs' children for the two years preceding the hearings, and the testimony of the parents themselves. That evidence discloses that the parents met while they were both patients at a mental institution and that they were married in early 1971; that the two children were born shortly thereafter; and that the parents were unable to care for the children properly. In October of 1971, the two children were placed in foster homes after being declared uncared for and neglected children.

The plaintiff father had been institutionalized for over a decade. During six months of 1973, when he was in the community, he was neither employed nor involved in vocational rehabilitation. At the time of the hearings, he was once again back in a mental institution. During a visit by the social worker in

the summer of 1972, he appeared to be infantile, and in a later telephone conversation with her, he was violent, abusive and threatening.

The plaintiff mother had been institutionalized since 1961. During an eighteen-month stay outside the hospital, which was her longest period without institutionalization since 1961, her employment record was sporadic, with no job being held for more than a few months. She had been faithful in visiting her children after the 1971 adjudication of neglect until the spring of 1973, when her husband rejoined her in the community. After he came to live with her, she stopped visiting her children and twice returned voluntarily to the mental hospital. The social worker had suggested to her that she might be able to make a stable plan for her children apart from her husband, but she was unwilling or unable to do so. As of the last hearing in the Juvenile Court, neither parent was involved in any form of vocational rehabilitation or in any form of therapy other than medication.

The above evidence which was properly before the Juvenile Court overwhelmingly supports its conclusion that the parents were unable by reason of continuing mental conditions to offer the care necessary for the well-being of their children, and that their conditions would be prolonged for an indeterminate period of time. See General Statutes § 17-43a (c) (Rev. to 1972).[4] "We have held in numerous cases that, where the facts contained in testimony admitted into evidence by an erroneous ruling are established by other evidence, the ruling is harmless and does not constitute reversible error. *DeCarufel* v. *Colonial Trust Co.*, 143 Conn. 18, 21,

[4] See footnote 3.

118 A.2d 798; see *Sondik* v. *Beth El Temple of West Hartford, Inc.,* 152 Conn. 712, 714, 207 A.2d 583. 'The ultimate question in such a situation is whether the erroneous ruling of the court would have been likely to affect the result. *Guerrieri* v. *Merrick,* 145 Conn. 432, 435, 143 A.2d 644. . . . [T]he appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him. *Casalo* v. *Claro,* 147 Conn. 625, 630, 165 A.2d 153; *Sears* v. *Curtis,* 147 Conn. 311, 316, 160 A.2d 742; *Guerrieri* v. *Merrick,* supra, 434; *DeCarufel* v. *Colonial Trust Co.,* supra.' *Obermeier* v. *Nielsen,* 158 Conn. 8, 13, 255 A.2d 819." *Mei* v. *Alterman Transport Lines, Inc.,* 159 Conn. 307, 316, 268 A.2d 639. Since the parents' histories of mental illness were otherwise established by the evidence, including their own testimony, and since the psychiatrist himself testified as to the essential contents of his report, neither the admission into evidence of the parents' past medical records nor the consideration by the court of the psychiatrist's report which was not introduced into evidence can be said to constitute reversible error.

We recognize the gravity of our decision and emphasize that the termination of parental rights is a most serious and sensitive judicial action. The natural rights of the parents, however, cannot be permitted to overshadow the best interests of the children, and in this context, we note that counsel, who was appointed by the court pursuant to the provisions of § 17-66c of the General Statutes to represent the children, has consistently supported the action of the Juvenile Court. By terminating the plaintiffs' parental rights, the children can now be removed from their temporary foster home and

placed in a permanent family environment through the adoption process. See General Statutes §§ 17-43a, 45-61j (c).

Accordingly, we conclude that the Superior Court was correct in concluding that the Juvenile Court's decision could reasonably be derived from the evidence properly before it.

There is no error.

In this opinion the other judges concurred.