[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I
This is the matter of Tameika, Dwayne and Kezia W. Tameika was born on August 21, 1981, Dwayne on May 2, 1984 and Kezia on February 1, 1987. These children's mother is Sheila W.; Tameika's putative father is Kenneth M. Dwayne's father is Philip P. Philip P. was listed as Kezia's father at the outset of this action but it has since been established that Kenneth McE. is Kezia's father.
The Commissioner of the Department of Children and Youth Services ("the Commissioner" and "DCYS") has filed petitions seeking the termination of these parents' parental rights. (A separate petition seeking termination of Kenneth McE's parental rights is the subject of another proceeding).
The petitions the subject of this proceeding were filed on January 4, 1990. Maternal Grandmother, Grace W., filed a Motion To Be Made An Equitable Party At Interest, for dispositional purposes only, which Motion was granted on February 21, 1991. Petitioner's Motion to Amend the subject petitions was granted on August 12, 1991. A hearing on said petitions began on August 12, 1991 and was concluded on August 13. Trial briefs were filed by the parties on or about September 26, 1991.
Proper notice was found and both Kenneth M. and Philip P. were defaulted for failure to appear on February 1, 1990. Mother, Sheila W., appeared and has been represented by counsel throughout these proceedings. Sheila W. was not present for the trial.
 II
In her petitions, the grounds for termination alleged by the Commissioner are identical as to the two girls, Tameika and Kezia; namely, that each girl has been abandoned by her father and mother; that each girl has been found in a prior proceeding to have been neglected and uncared for and that the parents have failed to achieve such degree of rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the children, they could assume a responsible position in the life of their children; that the children have been denied by reason of act or acts of commission or omission, the care, guidance or control necessary to their physical, educational, CT Page 10561 moral or emotional well being; that there is no on-going parent-child relationship between these girls and their mother or between each girl and her father; and that "the previous reasons have existed for not less than one year."
In Dwayne's petition, there is no allegation regarding abandonment by mother; and the other allegations of the petition refer to mother only, (the father's name on the petition being in error). Otherwise the grounds alleged on Dwayne's petition are the same as on his sisters' petitions.
 III
Dwayne's fate is the central issue in this case. "Respondent mother has not pressed the preservation of her rights to two of her children, Tameika and Kezia." (Respondent mother's "Trial Brief," p. 1). Sheila W. asks that even if statutory grounds for termination of her parental rights in and to Dwayne be found, that the court determine that such termination not be in Dwayne's interest and that the boy's best interest be served by preserving mother's parental rights and transferring guardianship of Dwayne to his maternal grandmother, Grace. W.
Given mother's recognition that she will not in the foreseeable future be able to parent these children adequately, it will serve no useful purpose to explore her record in detail.
Sheila W., born in 1965, has had a difficult life. She claims she was raped by an uncle at age 12 and that her mother, Grace, refused to believe this occurred. Sheila has an extensive psychiatric history, which included hospitalizations, suicidal threats, psychotic episodes, depressions, auditory hallucinations. She has had long-standing substance abuse problems. The three children, subjects of these petitions, have been in foster care since November, 1987. The three children were adjudicated uncared for on November 8, 1988. On that date, mother entered into court-ordered Expectations. Expectations included: mother to visit children at least once a week; mother to procure stable and adequate housing; mother to keep all appointments with DCYS; mother to keep DCYS aware at all times of current address and phone; mother to participate in counselling at CMHC or other appropriate facility by DCYS referral and to follow the therapist's recommendations as to drug, alcohol and/or psychiatric treatment needed. Mother has failed to comply with these Expectations. She has had one visit with the girls, Tameika and Kezia, since November 8, 1988; mother did visit Dwayne some 10 times in the 12 months following November, 1988.
Tameika's putative father, Kenneth M., has had no contact with the child since July, 1982. CT Page 10562
Dwayne's father, Philip P.'s whereabouts has been unknown since 1989. He has never visited Dwayne, nor provided financial or emotional support for Dwayne.
 IV
The court finds the petitioner has established, by clear and convincing evidence, that Tameika has been abandoned by Sheila W. and Kenneth M. and that Kezia has been abandoned by Sheila W. in the sense that the parents have failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child.
Further, that Tameika, Kezia and Dwayne have been found in a prior proceeding to have been uncared for on November 8, 1988 and that parents Sheila W., Kenneth M. (Tameika) and Philip P. (Dwayne) have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the ages and needs of these children, the said parents could assume a responsible position in the life of any of these children.
Further, the three children have been denied, by reason of act or acts of commission or omission, by respondent parents, the care, guidance or control necessary for the children's physical, educational, moral or emotional well being.
Further, that there is no on-going parent-child relationship between Sheila W. and each of the three children, between Kenneth M. and Tameika and between Dwayne and Philip P., by which we mean the relationship that ordinarily develops as a result of a parent having met on a day-to-day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or re-establishment of such parent-child relationship would be detrimental to the best interest of the child.
Further, that the above grounds for termination have existed for not less than one year.
 V
The statutory grounds (General Statutes 17a-112(b)) for termination having been established, the court makes the following findings, all by clear and convincing evidence, as required by General Statutes 17a-112(d):
1. As to the timeliness, nature and extent of services offered or provided to facilitate reunion, the Department made arrangements CT Page 10563 for visitation for mother, provided her with bus passes, assisted in arranging for drug evaluation and treatment but mother proved unable or unwilling to avail herself of such services. The Department stood ready to provide appropriate services for Kenneth M. and Philip P. but neither man has contacted the Department seeking services.
2. As to any court orders entered into by the parties, mother entered into Expectations ordered on November 8, 1988 and has failed to meet said expectations.
3. As to the children's feelings and emotional ties with respect to parents and caretakers:
Tameika recognizes her biological mother but has no positive feelings toward her. Tameika has positive emotional ties with her foster mother whom the child considers her mother. Because of his prolonged absence from her life, Tameika has no positive feelings or emotional ties to her putative father.
Kezia does not know her biological mother. Kezia has no positive feelings toward Sheila W. Kezia has strong, positive' ties to her foster mother, whom the child considers to be her mother.
Dwayne has no positive feelings or emotional ties toward Sheila W. Dwayne is fearful of Sheila W. Because of Philip P.'s prolonged absence from his life, Dwayne has no positive feelings or emotional ties toward Philip P. Dwayne recognizes father "on the street" but Philip P. does not recognize Dwayne.
Dwayne has positive feelings and emotional ties toward his foster parents, Mr. and Mrs. W., who have cared for Dwayne since December, 1987.
Dwayne has positive feelings toward his grandmother, he has visited with her, enjoyed visitation and has on occasion voiced an interest in living with her.
4. The ages of the children are:
Tameika: 10 yrs., 3 1/2 months
Dwayne: 7 yrs., 7 months
Kezia: 4 yrs., 10 months
5. Sheila W. has made little effort, to adjust her circumstances, conduct or condition to make it in the best interests of any of the children to return them to her in the foreseeable future. She CT Page 10564 has not maintained regular contact with the children nor with the children's foster parents. Kenneth M. and Philip P. have made no effort to adjust their circumstances, conduct or conditions to make it in the best interests of Tameika to return her to Kenneth M., or of Dwayne, to return him to Philip P.
6. Neither Sheila W., Kenneth M., nor Philip P. have been prevented from maintaining a meaningful relationship with their- respective children by the unreasonable act or conduct of any person or agency or by the parents' economic circumstances.
 VI
Having established the statutory grounds for termination of the parental rights of Sheila W., Kenneth M., and Philip P., the court must determine whether termination is in the best interest of each child.
Both girls, Tameika and Kezia, are healthy and apparently well adjusted. They are adoptable and their foster parents, Mr. and Mrs. C., who have cared for the children since November, 1987, wish to adopt the girls.
As to Tameika, the court finds by clear and convincing evidence, that it is in the best interests of Tameika that the parental rights of Sheila W. and of putative father Kenneth M. be terminated, and the parental rights of Sheila W. and Philip P. in and to Tameika W. are hereby terminated and the Commissioner of the Department of Children and Youth Services is appointed statutory parent for the purpose of arranging for adoption.
As to Kezia, the court finds, by clear and convincing evidence, that it is in the best interests of Kezia, that the parental rights of Sheila W. be terminated and the parental rights of Sheila W. in and to Kezia W. are hereby terminated.
As to Dwayne, the court finds, by clear and convincing evidence, that it is in Dwayne's best interests that the parental rights of his father, Philip P., be terminated and the parental rights of Philip P. in and to his son, Dwayne W., are hereby terminated. The issue of the termination of Sheila W's parental rights in and to Dwayne requires further discussion, infra.
 VII
It only remains for the court to decide, whether it is in Dwayne's interest that his mother's parental rights be terminated. Dwayne is adoptable in that his foster parents, Mr. and Mrs. Wh., wish to adopt him. The Wh's have been Dwayne's foster parents since December, 1987. Mother, Sheila W., asks that her parental CT Page 10565 rights not be terminated, but rather that guardianship of Dwayne be transferred to Grace W., Dwayne's maternal grandmother. Petitioner argues that it is in Dwayne's best interest that he be freed for adoption by the W.'s and that Grace W. is ill equipped to meet Dwayne's special needs.
Dwayne indeed has special needs. Clinical psychologist David Mantell describes Dwayne as follows: Dwayne is
 "a physically and sexually abused child, with a hyper-kinetic attention deficit characteristics. He is prone to a number of excessive behaviors, which includes sexual exhibitionism, self injurious behavior, behaviors that have the potential of doing considerable harm to others, as well as short attention span, and the other array of hyperactive behaviors that are generally, not lethal, either to himself or others but are very bothersome and contradictory to the requirements of day to day adjustment. He has a hard time sitting still, concentrating, listening, taking direction, poor self concept, difficulty with narration, prone to irresponsible behaviors, which he then, very quickly forgets, including statements and actions. So, he is a very seriously compromised child who has already required serious structural interaction in order to stabilize him. And, he is a child who has a very problematic prognosis for the future.
Dwayne's caretaker for the past four years are the Whs, his foster parents. His behavior has improved under their care. Dwayne is strongly bonded to the Whs, particularly Mr. Wh. There are elements of conflict in his relationship with Mrs. Wh. The foster parents have received training to equip themselves to meet Dwayne's special needs. They have four years of experience in dealing with Dwayne's special needs. They have been caring for him day in and day out for these four years. The Whs have stated they had no objection to Dwayne's maintaining a relationship with Grace W. should the Whs. adopt the boy.
 VIII
Grace W. is a friendly, exuberant woman. She has persisted undaunted through many difficulties in her life. She is deeply attached to Dwayne and Dwayne is fond of her. At one time up to May, 1991, Grace was seen by DCYS as a prospective caretaker. Grace W. participated in several evaluations between 1989 and 1991. She also testified in the trial of this matter, where the court had the opportunity to hear her testimony and observe her CT Page 10566 demeanor.
Certain recurring themes emerge from the reports, evaluations and testimony relating to Grace W.'s ability to care for Dwayne. Grace W. denies or minimizes the problems of this "severely damaged" (Mantell) child. Grace W., lacking understanding of Dwayne's problems, is not well-equipped to meet his special needs. Given the simplicity of her approach to his problems, her pattern of denial, and her lack of experience in caring for Dwayne over the past four years, training in dealing with Dwayne's problems would be unlikely to transform Grace W. into a competent caretaker for Dwayne.
In addition, the court notes that Grace and (in January) Sheila W. had a series of visits with Dwayne in the first half of 1991 and that these visits were halted by DCYS in May of 1991 because of the dramatic and escalating deterioration in Dwayne's behavior following these visits.
The court is aware that termination of parental rights is "a most serious and judicial action." In re Jessica M., 217 Conn. 459,464, quoting from Anonymous v. Norton, 168 Conn. 421, 430,362 A.2d 532, cert. denied 423 U.S. 935, 96 S.Ct. 294,46 L.Ed.2d 268 (1975). The interests of parents in their children is a fundamental constitutional right, that "undeniably warrants deference and, absent a powerful countervailing interest, protection." In re Jessica M., supra at 464, 465, quoting from Stanley v. Illinois, 405 U.S. 645, 651 92 S.Ct. 1208,31 L.Ed.2d 551 (1972). Such countervailing interest is present here.
The court finds, by clear and convincing evidence, that Dwayne's best interests require that his mother's, Sheila W's. parental rights, be terminated. Accordingly, the parental rights of Sheila W. in and to her son Dwayne W. are terminated and the Commissioner of the Department of Children and Youth Services is appointed statutory parent for the purpose of arranging for this child's adoption. The Commissioner is to file the statutorily required reports regarding Tameika, Dwayne and Kezia three months from the date of the issuance of this decision and thereafter every six months until adoption is effected.
 IX
Trial counsel for mother and for grandmother are appointed appellate counsel should mother or grandmother seek to take an appeal of this judgment. Should counsel decline to perfect such appeal because in her professional judgment it lacks merit, counsel is to notify the court promptly so as to allow the court to appoint an attorney to review the record. Should such second attorney be appointed and decline to perfect an appeal that CT Page 10567 attorney is to notify the court promptly so that the clerk of the court can notify mother or grandmother of her right to secure counsel for an appeal, which counsel, if qualified, may be appointed by the court.
JOHN T. DOWNEY, JUDGE