[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I
This is the matter of the A. children. By petitions filed on January 9, 1991, the Commissioner of the Department of Children and Youth Services ("the Commissioner" and "DCYS") seeks the termination of the parental rights of Anthony and Brenda A. in and to their children, Toni, Donna and Sheila. Toni was born on November 28, 1984, Donna on July 7, 1986 and Sheila on November 11, 1988. CT Page 1744
The children first came to the attention of the court on April 3, 1989 when Orders of Temporary Custody ("OTCS") were issued and neglect petitions filed on their behalf.
On October 16, 1989, mother pleaded nolo contendere and the three girls were adjudicated neglected — permitted to live under conditions, circumstances or associations injurious to their well-being. On November 20, 1989, after a hearing the children were adjudicated neglected and uncared for by father. The children were committed to the care and custody of the Commissioner until April 16, 1991. On April 10, 1991, the three girls' commitments were extended until October 16, 1992.
 II
A hearing on the termination petitions opened on September 9, 1991, continued on September 10 and the parties rested on September 16, 1991. Briefs were filed on or about October 7, 1991. In the course of the hearing, testimony was taken from Dorothy Stubbe, M.D., a psychiatrist; Nancy Millian, Psy. D., clinical psychologist; Cindy Cross, DCYS social worker: Lisa Pettine, the children's foster mother; Kathleen Boudreau, psychiatric social worker; and on behalf of mother, Janice Taylor Wilkins, mother's friend; and Beverly Herbst, parent-child coordinator at Connecticut Correctional Institution, Niantic. The oldest child, Toni, was called as a witness, but the court determined she was incompetent to testify, after attempting to question her about her allegations of physical, emotional and sexual abuse.
 III
These petitions are brought pursuant to General Statutes,17a-112.
The Commissioner has alleged identical statutory grounds for termination on behalf of each child. These are: The child has been abandoned by the father in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; the child has been found in a prior proceeding to have been neglected or uncared for. The mother and father have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child they could assume a responsible position in the life of the child; the child has been denied by reason of acts of commission or omission by the mother and father the care, guidance or control necessary for her physical, educational, moral or emotional well being, there is no on-going parent-child relationship with respect to the mother and to the father which is defined as the relationship CT Page 1745 which ordinarily develops as a result of a parent having met on a continuing, day-to-day basis, the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or re-establishment of the parent-child relationship would be detrimental to the best interests of the child; finally, that the above-mentioned reasons have existed for not less than one year.
 IV
The termination of parental rights is "a most serious and sensitive judicial action," In re: Jessica M., 217 Conn. 459 at 464, quoting from Anonymous v. Norton, 168 Conn. 421, 430,362 A.2d 532, cert. denied, 423 U.S. 935, 96 S.Ct. 294,46 L.Ed.2d 268 (1975). The interest of parents in their children is a fundamental constitutional right, In re: Jessica M., supra at 464. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. In re Jessica M., supra at 465, quoting from Santosky v. Kramer, 455 U.S. 745, 573, 102 S.Ct. 1388,71 L.Ed.2d 599 (1982).
To effectuate a non-consentual termination of parental rights a petitioner must prove first, by clear and convincing evidence, the existence of at least one of the statutory grounds for termination set forth in General Statutes 17a-112. If a statutory ground for termination is so established, the court must proceed to make the six written findings required by General Statutes, 17a-112 (d) before moving on to determine whether termination is in the best interests of the child. At this dispositional stage, petitioner must prove by clear and convincing evidence that the termination sought is in the child's best interests. "Consideration of the best interests of the child cannot vitiate the necessity of compliance with the statutory criteria for termination." In re Jessica M., supra, at 465. In re Barbara J., 215 Conn. 31, 45. Nor can the court consider the availability of an appropriate adoptive home as bearing on the issue of establishing a statutory ground for termination; In re Jessica M., supra, at 466.
 V
As to father, Anthony A., the court makes the following findings, by clear and convincing evidence:
Father is incarcerated. Since April, 1989 father has had no contact with his three daughters. He has sought no visitation and has not maintained contact with the foster parents of the girls. Father has abandoned the girls in the sense that he has failed to maintain a reasonable degree of interest, concern or CT Page 1746 responsibility as to the welfare of these three girls.
The three children were adjudicated neglected and uncared for by father on November 20, 1989. At that time Anthony A. entered into court-ordered expectations designed to assist father in rehabilitation. Father was to participate in sexual offender's treatment as available, individual therapy as available, and parenting skills training as available; father to cooperate with reassessment evaluation after one year. There is no evidence that father complied or attempted to comply with any of these expectations. Father has consistently refused any services offered by DCYS and has sought no services from DCYS. On advice of counsel, father has refused to participate in child custody evaluations ordered by the court. The court finds that father has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the ages and needs of the children, he could assume a responsible position in their lives.
Recognizing the difficulties posed by father's incarceration and the allegations made against him by the two older girls, the court finds that Anthony A.'s failure to contact the children, the DCYS, the foster parents or to make inquiry into the children's well-being, suffices to establish that the three girls have been denied by reason of act or acts of commission or omission by father, the care, guidance or control necessary for their physical, educational, moral or emotional well-being.
The court finds further that there is no on-going parent-child relationship between Anthony A. and any of his three daughters, by which we mean the relationship which ordinarily develops as a result of a parent having met on a continuing day-to-day basis the physical, emotional, moral and educational needs of a child. Sheila can have no recollection of her father as she has had no contact with him since she was an infant. There is no evidence that she has any feelings toward, or emotional ties with Anthony A. Toni and Donna harbor intensely negative feelings toward Anthony A. Dr. Stubbe described Toni and Donna as "terrified" of their father. The observation of other witnesses buttress the finding that Toni and Donna have no feelings of a positive nature toward Anthony A. See In re: Juvenile Appeal (84-6), 2 Conn. App. 705, 709.
As indicated, supra, father is serving a lengthy sentence.
As his "Trial Brief" states: "The respondent father does not expect to be able to resume custody of the children within a reasonable period of time and therefore does not assert himself as a parental resource for the children" (Trial Brief of Respondent Father," p. 1). In the circumstances of this case, the court CT Page 1747 finds that to allow further time for the establishment or re-establishment of the parent-child relationship between Anthony A. and Toni, Donna or Sheila would be detrimental to the best interests of these children.
Finally, the court finds the above-cited grounds for termination have existed for not less than one year.
 VI
The statutory grounds for termination of Anthony A.'s parental rights having been established, the court makes the following findings, as required by General Statutes, 17a-112 (d), by clear and convincing evidence:
(1) DCYS stood ready to offer father timely and appropriate services, but father refused services offered, and has not sought services from DCYS.
(2) Father entered into court-ordered expectations on November 11, 1989. There is no evidence that he complied with expectations.
Father refused, on advice of counsel, to participate in a child custody evaluation ordered by the court on June 7, 1989.
(3) As indicated, supra, Toni and Donna have strong negative feelings toward Anthony A. Sheila has had no contact with Anthony A. since infancy. She does not know him and has no positive feelings toward him.
Dr. Millian reported that while interviewing Toni in June, 1989, the child said she "wanted to see her father, but did not want to see her mother." This single remark, apparently made when the child was "very agitated" and in the course of her discussing alleged sexual abuse by both father and mother, cannot be construed as evidencing positive emotional ties of the child to the parent, sufficient to demonstrate a parent-child relationship.
 (4) The children's ages are: Toni: 7 yrs., 2 mos. Donna: 5 yrs., 6 mos. Sheila: 3 yrs., 2 mos.
(5) Anthony A. has made no effort to adjust his circumstances, conduct or conditions to make it in the best interest of any of the children to be returned to Anthony A. in the foreseeable future. Anthony A. has maintained no contact with the girls nor with their foster parents. He has made no incidental visits, communications or contributions. CT Page 1748
(6) There is no evidence that Anthony A. has been prevented from maintaining a meaningful relationship with any of the three children by the unreasonable act or conduct of the other parent or any other person or by his economic circumstances.
 VII
Anthony A. has been incarcerated since March, 1989. On January 4, 1991, he was sentenced to 18 years suspended after ten years on a charge of attempted Sexual Assault 1st degree. (The victim was not his child). He makes no claim he can assume the obligations of parenthood in the foreseeable future. The children are adoptable. Given father's circumstances and the feelings of the girls toward him, there is no realistic prospect of reunification between father and any of the three girls. The court finds, by clear and convincing evidence, that it is in the best interests of Toni, Donna and Sheila A. that the parental rights of their father, Anthony A. be terminated.
 VII
Brenda A., the mother of Toni, Donna and Sheila has been incarcerated since March, 1989. On January 4, 1991, she was sentenced to 14 years suspended after six years on a charge of aiding and abetting sexual assault (attempt). (The victim was not her child.
Mother has not seen Toni or Donna since March, 1989, nor has telephone contact been allowed since May, 1989. Mother has had monthly visits with Sheila. The issue of visitation of the girls with their mother surfaced early in this case.
Toni's therapist, Kathleen Boudreau, in a report dated February 13, 1990, stated:
 "Both girls became extremely agitated and frightened when discussing their experiences with Brenda and Tony [Anthony A.]. Visits to Brenda will be destructive to this child and will create more stress in her life than she can handle. Visits with Brenda will reawaken the terror of her traumas and will cause Toni great emotional damage."
Donna's therapist, Cheryl Drucker, in a letter dated February 12, 1989, stated in pertinent part:
 "It would be foolhardy to consider risking the emotional stability and sense of well-being that CT Page 1749 Donna has gained in both her current foster placement and in therapy by granting Brenda A. visitation rights." and "I strongly believe that contact with Brenda A. may re-traumatize a presently stable, fragile Donna, a trauma which may cause irreparable harm to Donna's mental health, emotional harm from which Donna may never recover.
Dr. Stubbe observed one visit on June 24, 1991 between Sheila and Brenda at Niantic. Dr. Stubbe testified that Brenda wanted very much to interact with Sheila but was not attuned to the child's needs and that the child was made quite distraught by her mother's efforts. Dr. Stubbe concluded that Brenda was not able to think of Sheila's needs but put her own needs first. Brenda saw Sheila as a way of keeping a relationship with Toni and Donna.
Dr. Millian, who did a Psychological evaluation of Brenda A. in June, 1989, described Brenda as "an extremely immature, egocentric woman of mentally retarded intellectual functioning," "a very disturbed young woman who has a thought disorder" . . . one who "struggles to give to her children those things she urgently desires for herself. Unfortunately, she lacks the ability to put her own needs aside to respond to her children."
DCYS case worker Cindy Cross accompanied Sheila on visits to mother, beginning in June, 1989. Ms. Cross testified she observed mother to act inappropriately on numerous occasions, citing three such occasions. Cross stated she believed Brenda was unable to appreciate Sheila's needs.
Dr. Stubbe recognized mother's earnest desire to parent her children but had serious doubts that mother would be able to acquire the needed parenting skills. Dr. Stubbe testified that she could say with reasonable certainty that she doesn't think these children will ever see their biological mother as their parent. The court finds the above-stated conclusions as to Brenda, of Drs. Millian and Stubbe and Ms. Cross to be persuasive.
 IX
As indicated, the children were found neglected in a prior proceeding. The court finds, by clear and convincing evidence, that mother has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the ages and needs of these children, she could assume a responsible position in the lives of these children. CT Page 1750
Since her incarceration mother has earnestly sought and participated in programs in an effort to deal with her problems and to better herself. Her effort evokes sympathy. However, such effort has been inadequate. Programs critical to her rehabilitation, parenting and sexual offender's treatment, were not available to her. Given her cognitive end emotional limitations, it is highly doubtful that Brenda A. could assume a responsible position in the lives of these children within a reasonable time, even were she to receive such treatment.
The court finds the petitioner has failed to prove by clear and convincing evidence that these three children have been denied by reason of acts of commission or omission by mother, the care, guidance or control necessary for their physical, educational, moral or emotional well-being. Any such acts occurred prior to adjudication on the neglect petitions and the children have been well treated in foster care.
The court finds by clear and convincing evidence that there is no on-going parent-child relationship between Brenda and Toni, and Donna or Brenda and Sheila, by which we mean that relationship which ordinarily develops as a result of a parent having met on a continuing, day-to-day basis, the physical, emotional, moral and educational needs of each child and that to allow further time for the establishment of such parent-child relationship would be detrimental to the best interests of each child.
Toni and Donna have strong negative feelings toward Brenda A. They fear and loathe her. Toni and Donna have accused Brenda of physical, emotional and sexual abuse. These two girls have not seen their mother for nearly three years, based on their desires and their therapists' recommendations.
Sheila has had monthly visits with Brenda over an extended period of time beginning in June, 1989. Sheila knows Brenda as "someone she visits once a month." (testimony of Dr. Stubbe). While Sheila does not display aversion to Brenda, there is no indication she views Brenda as her mother. Brenda's interaction with Sheila has been seen on several occasions by observers (Ms. Cross, Dr. Stubbe) as "inappropriate." On occasion, a visit with Brenda goes pleasantly enough. Typically, Sheila is reluctant to go on these visits, becomes fretful, interacts as readily with anyone else present as she does with Brenda. "No mother-child attachment was observed in the interaction" (Dr. Stubbe, Petitioner's Exhibit E, regarding a visit in June, 1991).
There is no parent-child relationship between Brenda and Sheila, Brenda and Toni, Brenda and Donna, and to allow further time for the establishment or re-establishment of such relationship would be detrimental to the best interests of the CT Page 1751 three children.
The above-cited grounds for termination have existed for not less than one year.
 X
The statutory grounds for termination having been established, the court makes the following findings as required by General Statutes 17a-112 (d), all by clear and convincing evidence:
(1) DCYS arranged for monthly visitation between Brenda and Sheila beginning in May, 1989, and transported the child to mother's place of incarceration, Niantic. DCYS held administrative reviews at Niantic.
(2) Brenda took part in court-ordered evaluations and entered into court-ordered expectations and complied with expectations so far as circumstances allowed. DCYS complied with its expectations.
(3) Toni and Donna have strong negative feelings toward Brenda. Sheila has evidenced no feelings or emotional ties toward Brenda.
Toni, Donna and Sheila have strong positive emotional ties toward their foster parents, Mr. and Mrs. P., and toward the three natural children of the foster parents.
(4) The children's ages are given, supra.
(5) Regarding the efforts Brenda has made to adjust her circumstances, conduct or conditions to make it in the best interest of any of the three girls to return them to mother's home in the foreseeable future; Brenda has participated in all administrative reviews. She has eagerly sought information regarding her children. She has sent twenty to thirty letters and cards to the children. She sought telephone contact but such contact was discontinued as upsetting to the older girls. Brenda has availed herself of services available to her in prison. She sees a psychologist and a psychiatrist weekly. She participated in a mother's support group weekly for five months in 1989. She completed a behavorial studies program, participated in a program for survivors of physical and emotional abuse, and "Let's Talk About Me" program. She has worked in the kitchen and studied for her G.F.D.
(6) Brenda has not been prevented from maintaining a meaningful relationship with the three girls by the unreasonable act or conduct of any person or by her economic circumstances. DCYS' denial of contact between Brenda and Toni and Donna is reasonable CT Page 1752 under the circumstances.
 XI
Brenda remains incarcerated. She is woefully deficient in parenting skills. For many months after the children's commitment she disclaimed responsibility for the abuses they suffered and she has been unable to attend sexual offender's program (none is available to Niantic). She has not seen Toni and Donna for nearly three years and they view her with fear and aversion. Her visits with Sheila have resulted in little or no progress in building a relationship with the child. The three girls are deeply attached to each other and to their foster family. There is a reasonable prospect of adoption for these girls.
The court concludes, by clear and convincing evidence, that it is in the best interests of Toni, Donna and Sheila A., that the parental rights of Brenda A. be terminated.
Accordingly, the parental rights of Anthony A. and Brenda A. in and to their daughters Toni, Donna and Sheila are terminated and the Commissioner of the Department of Children and Youth Services is appointed statutory parent for the purpose of arranging for the adoption of these three children. The Commissioner is to file a written report on a case plan within ninety days and thereafter as required by statute (General Statutes 17a-112 (i)).
 XII
Trial counsel for the parents are appointed appellate counsel, should either parent seeks to take an appeal of this judgment. Should counsel decline to perfect such appeal because in his or her professional judgment it lacks merit, counsel is to file a timely motion to withdraw and a motion to extend the appeal period. Such motions, if unopposed, will be granted ex parte and new attorney will be appointed to review the record. Should such new attorney decline to perfect an appeal, that attorney is to notify the court promptly, so the clerk of the court may notify the parent of his or her right to secure counsel for an appeal, who, if qualified, may be appointed by the court.
JOHN T. DOWNEY, Judge