[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
These are petitions for termination of mother's parental rights, filed by father on behalf of Lisa, Sara and Michael N., in Probate Court and transferred to this court pursuant to General Statutes 45a-715(g).
The children's father is Michael N. Their mother is Gail N. Lisa's year of birth is ___ 1975; Michael's is ___ 1979; and Sara's is ___ 1980.
The sole ground for termination alleged in each petition is that stated in General Statutes 45a-717(f)(3): There is no on-going parent-child relationship which is defined as the relationship which ordinarily develops as a result of a parent having met on a continuing, day-to-day basis, the physical, emotional, moral and educational needs of the child, and that to allow further time for the establishment or re-establishment of the parent-child relationship would be detrimental to the best interests of the child.
 II.
A hearing on the subject petitions opened on September 30, CT Page 8798 1991, continued on October 1 and October 16, 1991, when the parties rested. Briefs were filed on or about November 22, 1991.
In the course of the hearing, testimony was had from Kathryn Bennett, DCYS; ___ the children's step-mother; ___ ___ the father; ___ the oldest of the three children; ___ the children's maternal aunt; ___ maternal uncle; and ___ the children's mother. Following the conclusion of the hearing, the court was notified by letter from petitioner's counsel, received on November 29, 1991, that the children's father, ___ died in November ___ 1991.
 III.
On February 27, 1992, the court on its own motion reopened this matter for the sole purpose of determining the following issues:
(1) Does this cause of action survive the petitioner's demise?
(2) If the answer to question 1 is "yes", does General Statutes 52-599 require the substitution of an executor or administrator of the deceased petitioner?
In its order the court set a hearing date of March 5, 1992 and directed the parties to file memoranda of law on the issues cited by March 4th. On March 2nd the attorney for respondent mother requested an extension of time and indicated his willingness to waive the provisions of General Statutes 51-183b, and stating that the attorneys for the other parties had no objection. A hearing was held on April 8, 1992, at which time respondent's request for additional time was granted, the parties oral argument and agreed the court would make its decision on the questions presented after the parties had filed memoranda of law.
Memoranda were filed by the children's attorney on April 8 and April 29; by petitioner's attorney on April 23 and April 30; and by the attorney for respondent mother on April 23, April 28 and May 6.
In its memorandum filed July 28, 1992, the court answered both questions in the affirmative. CT Page 8799
On August 6, 1992 respondent filed her motion for reconsideration.
On August 26, 1992 hearing was held on respondent's motion for reconsideration as well as the motion of petitioner's executrix ___ to be substituted as petitioner in lieu of Michael N. On that date the court denied the motion for reconsideration and granted the motion of executrix to be substituted as petitioner.
 IV.
Termination of a parent's rights is "a most serious and sensitive judicial action", Anonymous v. Norton, 168 Conn. 421,430, 362 A.2d 532 cert. denied, 423 U.S. 935 S.Ct. 294,46 L.Ed.2d 268 (1975). The interest of parents in their children is a fundamental constitutional right that "undeniably warrants deference and absent a powerful countervailing interest, protection." In re: Jessica M., 217 Conn. 459, 464, quoting from Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208,31 L.Ed.2d 551 (1972). Termination of parental rights does not follow automatically from parental conduct justifying the removal of custody. In re Jessica, supra, at 465. In order to secure termination of Gail's parental rights, petitioner must allege and prove, by clear and convincing evidence, at least one of the grounds enumerated in General Statutes 45a-715(f).
To establish the ground of "no on-going parent-child relationship" alleged in the subject petitions, petitioner must prove, by clear and convincing evidence, that the children, and each of them, have no present memories or feelings for their natural mother that are positive in nature. In re Jessica, supra, at 469. Should the court find no on-going parent-child relationship, it must go on to decide whether to allow further time for the establishment or re-establishment of such parent-child relationship would be detrimental to the children or each of them.
Once the statutory ground for termination is established and after making, by clear and convincing evidence, the six findings required by General Statutes 45a-715(h), the court must make a determination, again by clear and convincing evidence, whether termination of mothers parental rights is in the best interest of her children. Only then may her rights be terminated. CT Page 8800
 V.
The children's parents were married in 1973. Lisa was born in 1975. The parents divorced in 1978 but resumed living together. Young Michael was born in 1979, Sara in 1980. The parents separated in 1982, and an intense legal battle over custody and visitation ensued. Father obtained temporary, and in 1983, permanent custody of the children, with visitation to the mother. Twice, first in 1982 and then in 1984, father was found in contempt for interfering with mother's visitation. In September 1984, the children's attorney moved for a suspension of visitation by mother pending results of an evaluation of the situation regarding visitation and the court (DeMayo, J.) suspended visitation on September 26, 1984. Subsequently, Sally Provence, M.D. submitted an assessment regarding visitation, recommending inter alia, that the children not be forced into an externally imposed visitation schedule, that visits between and the children "not be resumed at this time"; and that decisions as to when, with whom and for how long visits with family members take place, should be the responsibility of father __ and step-mother ___. The parties by their attorneys agreed to accept Dr. Provence's recommendations and by agreement the Provence assessment and its recommendations were entered into the record and accepted by the court (Coppeto, J.) on August 15, 1985. There the matter rested until the filing of the instant petitions to terminate mother's parental rights, on May 22, 1991, in the Court of Probate, District of North Haven.
 VI.
Respondent ___ has not visited with her children since the suspension of visitation in 1984, excepting an unauthorized meeting with the children at mother's parents' home circa Christmas of 1984. Since August 15, 1985, mother has not sought court action to restore visitation.
Mother has serious, longstanding problems with drug abuse, going back at least to 1984. Since that time she has been periodically "whereabouts unknown". She has entered at least five drug treatment programs, and since 1987 has been incarcerated three times, and was most recently released from prison in July, 1991.
Mother acknowledges that there is no parent-child relationship CT Page 8801 existing between her and each of her children. She testified she is not seeking custody, nor even visitation unless the children request visitation. She acknowledges that the children wish to be adopted by step-mother executrix (Respondent's Brief, p. 10). But mother is certain the children need to have some relationship with her. She wants them to know she loves them and that the circumstances surrounding her drug abuse doesn't mean she doesn't love them.
 VII.
There is ample evidence to support the allegation of no parent-child relationship. The children have not seen mother since 1984. Lisa and Michael have negative feelings toward mother and Sara does not know her and does not remember her. The children had no contact with mother for several years and mother's recent efforts to contact the children were frightening and confusing to Lisa and Sara. Lisa testified that her receipt of a photo album from mother in August, 1991, frightened her. Lisa observed Sara to be upset after receiving a card from mother. The children have no positive memories of, nor feelings toward mother.
The court finds, by clear and convincing evidence, that no parent-child relationship exists between mother and Lisa, mother and Michael, or mother and Sara.
The evidence is uncontroverted that the children are living happily in a loving, stable home. The children are at an age when they understand the issues involved. They perceive continuation of mother's parental rights as a threat to their continued happiness. They view mother's re-emergence in their lives as fearful and threatening. So long as mother retains her legal status as mother, the children are subject to fear, confusion and uncertainty as to the stability of their current family life. These fears are not chimerical, but in Lisa's and Michael's cases, based on memories of bad experiences during visitation with mother years ago. While mother disclaims any intention to seek visitation unless a child requests it, she testified she could not say what her position might be "two years from now." The children wish their mother's rights to be terminated. There is no reasonable prospect in the circumstances of this case for the establishment or re-establishment of a parent-child relationship between the mother and any of the children in the foreseeable future. To attempt to establish such relationship with one or more of the children would be to inflict emotional and perhaps psychological harm on the children. CT Page 8802
The court finds further, by clear and convincing evidence, that to allow further time for the establishment or re-establishment of such parent-child relationship, would be detrimental to the best interest of Lisa, Michael and Sara.
 VIII.
Pursuant to General Statutes 45a-717(h), the court makes the following findings:
(1) There was no agency charged with facilitating reunion of mother and these children, nor did mother seek such services.
(2) Mother failed to participate in the study ordered by the Probate Court. Mother did participate in the update of said study ordered by this court (Goldstein, J.) on June 20, 1991.
(3) Lisa, Michael and Sara have no positive feelings or emotional ties with their mother ___. Lisa and Michael have negative feelings toward their mother. Sara has no memory of her mother.
All three children have strong positive feelings and emotional ties toward step-mother executrix. They view step-mother as their mother and wish to be adopted by her.
(4) Lisa is approximately 17 years old.
Michael is approximately 13 years, 3 months old.
Sara is approximately 12 years old.
(5) Mother's efforts in the past seven years to adjust her circumstances, conduct or conditions to make it in the best interest of the children to return any of them to her home, have been entirely inadequate.
Mother has repeatedly entered drug treatment programs, evidencing an effort to adjust her circumstances, conduct or conditions, but she has repeatedly fallen prey to her drug addiction. She has repeatedly been incarcerated. Mother makes no claim she can assume the responsibilities of parent and care-giver for these children in the foreseeable future.
CT Page 8803 Mother's visitations were suspended by court order in 1984 and she has not sought court action to reinstate visitation. Her occasional efforts to contact the children have been traumatic to them, e.g., the unannounced visit circa 1984; her forwarding a photo album to Lisa in August, 1991; her sending a card to Sara when the child was at camp.
(6) Between 1982 when the parents finally separated and 1984, father was twice found in contempt for obstructing visitation of mother with the children. Shortly after visitation was re-established after the latest contempt finding, counsel for the children moved for suspension of mother's visitation, citing the negative effects forced visitation was having on Lisa. The motion was granted and in 1985, the parties (mother was not in court) through counsel, agreed to abide by Dr. Provence's recommendation that mother's visitation not be resumed. With the benefit of hindsight and in light of Dr. Provence's conclusions, the court finds mother was not prevented from maintaining a meaningful relationship with the children by the unreasonable act or conduct of father or any other person or by her economic circumstances.
 IX.
The court, having concluded that the statutory basis for termination has been established, must go on to determine if such termination is in the best interests of Lisa, Michael and Sara.
It is uncontroverted that father, prior to his death, and step-mother have provided the three children with a warm, loving, stable home. The children are closely bonded to step-mother and view her as their mother. Lisa testified that one reason she sought termination of mother's parental rights was Lisa's concern over her father's health. If step-mother adopted them, the children would be assured of continuing together with her.
The children's negative feelings toward mother and the fear and uncertainty engendered in them by continuation of her parental rights have been recited, supra, and need not be repeated here. Mother has had a difficult life. Her suffering and her repeated efforts to straighten out her life evoke pity and respect. She seeks to cling to a status quo that affords her some solace but is the source of fear, confusion and uncertainty in the three children. In such painful circumstances, the court must act in the children's best interests. CT Page 8804
The court finds, by clear and convincing evidence, that it is in the best interests of the children that mother's parental rights be terminated. Accordingly, the parental rights of mother ___ in and to her children Lisa, Michael and Sara, are hereby terminated.
Guardianship, as defined in Conn. General Statutes17a-93(d), of Lisa, Michael and Sara N. is vested in step-mother's who is found suitable and worthy, and for the purpose of arranging for the adoption of these three children.
The guardian shall report to the court within ninety days from today, pursuant to Conn. General Statute 17a-112(i).
JOHN T. DOWNEY, JUDGE