[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is the matter of Darnell D., Jr. ("Junior"). Junior's date of birth is December 8, 1985. By "co-terminous" petitions filed October 7, 1991, the Commissioner of the Department of Children and Youth Services ("the Commissioner" and "DCYS") alleged that Darnell was neglected, and sought to terminate the parental rights of Darnell's mother, Nancy G., and father, Darnell D., Sr.
A hearing on the petitions opened on April 6, 1992, continued on April 7th, and the parties rested on April 29, 1992. Trial briefs were ordered to be filed by May 20, 1992, and this date was later extended at the request of the attorney for the child, who filed his brief on June 26, 1992.
Following the conclusion of the hearing, the court was informed that the child's mother had died. Accordingly, the petition as to mother is dismissed as moot.
 II.
In her neglect petition, the Commissioner alleges that "Darnell has been denied proper care and attention on behalf of" father.
In her petition to terminate the parents' parental rights, as amended on April 6, 1992, the Commissioner alleges that the child has been abandoned by father in the sense that he failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; that the child has been found in a prior proceeding to have been neglected or uncared for; that father has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, he could assume a responsible position in the life of the child; that the child has been denied by reason of act or acts of commission or omission by CT Page 9059 the father the care, guidance or control necessary for his physical, educational, moral or emotional well-being; that all grounds cited had existed for not less than one year, except for the alleged "acts of commission or omission" by father, for which the petitioner seeks a waiver of the one-year requirement as necessary to protect the best interests of the child.
 III.
The termination of parental rights is "a most serious and sensitive judicial action." In Re Jessica M., 217 Conn. 459 at 464, quoting from Anonymous v. Norton, 168 Conn. 421, 430,362 A.2d 532, cert. denied, 423 U.S. 935, 96 S.Ct. 294,46 L.Ed.2d 268 (1975). The interest of parents in their children is a fundamental constitutional right. In Re Jessica M., supra, at 464. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. In Re Jessica M., supra at 465, quoting from Santosky v. Kramer, 455 U.S. 745, 573, 102 S.Ct. 1388,71 L.Ed.2d 599 (1982).
To effectuate a non-consentual termination of parental rights, a petitioner must prove first, by clear and convincing evidence, the existence of at least one of the statutory grounds for termination set forth in General Statutes 17a-112. If a statutory ground for termination is so established, the court must proceed to make the six written findings required by General Statutes 17a-112(d) before moving on to determine whether termination is in the best interests of the child. At this dispositional stage, petitioner must prove by clear and convincing evidence that the termination sought is in the child's best interests. "Consideration of the best interests of the child cannot vitiate the necessity of compliance with the statutory criteria for termination." In Re Jessica M., supra, at 465; In Re Barbara J., 215 Conn. 31, 45. Nor can the court consider the availability of an appropriate adoptive home as bearing on the issue of establishing a statutory ground for termination. In Re Jessica M., supra, at 466.
 IV.
Junior has known much instability in his young life. Following his birth, Junior and his parents stayed with friends for some three months. His parents then departed, leaving Junior behind. In March of 1986, the child was placed in foster CT Page 9060 care, and then in October, 1986, he was placed with his paternal aunt, to whom guardianship was transferred. He remained with the aunt until February, 1991. During the child's time with the aunt, father managed approximately one visit per month. In February, 1991, the aunt returned the child to his father and father cared for the boy until June, 1991, at which time father requested DCYS to remove the child, and the child was again placed in foster care.
Junior has special needs. He appears to be developmentally delayed but has flourished since his placement in foster care. Junior has a bedwetting problem which became the focus of father's frustration and anger during father's five-month effort at parenting. Father blamed the child for bedwetting. Father on more than one occasion struck Junior as punishment for bedwetting. Though persistent efforts were made by service providers, father seemed unable to grasp that Junior was not bedwetting deliberately to thwart father. After threatening to leave the child on various occasions, father called DCYS on June 24, 1991, requesting the removal of the child, saying it was time for someone else to take the child and further expressing fear that he might hurt the child. Subsequently, father signed permission to place and the child was placed in his current foster home. Five years after the child's birth, father's five-month effort at parenting ended in failure.
 V.
With regard to the neglect petition, the court finds by a fair preponderance of the evidence that Junior is a neglected child in that he has been denied proper care and attention by his father, and the court adjudicates Junior neglected accordingly.
Turning to the petition to terminate father's parental rights, the court finds that the petitioner has failed to establish by clear and convincing evidence that father has abandoned Junior.
Petitioner's second allegation against father is that the child has been found in a prior proceeding to have been neglected or uncared for. Petitioner relies on a decision rendered on June 28, 1991 by the New Haven Probate Court (Keyes, J.), giving temporary custody of Darnell, Jr. to the Commissioner of DCYS. This court finds that this order and decree of temporary custody is not a finding of neglected or uncared for as contemplated by CT Page 9061 the statute. The court notes that the quantum of proof needed to support an order of temporary custody may be inadequate to support a finding of neglected or uncared for even if the grounds alleged in an application for temporary custody were identical or similar to the grounds alleged in a neglect petition.
The petitioner has failed to establish by clear and convincing evidence that the child has been found in a prior proceeding to have been neglected and uncared for. Accordingly, father's alleged failure to rehabilitate cannot serve as a statutory ground for termination.
Petitioner further alleges that this child has been denied, by reason of act or acts of commission by the father, the care, guidance or control necessary for the child's physical, educational, moral or emotional well-being.
 VI.
For much of this child's life, father has been homeless, living periodically on the New Haven Green, engaging periodically in "witnessing" on or in the vicinity of the Green. For most of the child's life father ceded the care of the child to others. During the years Junior lived with his aunt, his father visited sporadically, contributed nothing material to the child's well-being and whatever care, guidance or control received by Junior was received from others. As a noncustodial parent with ready access to the child, father had ample opportunity to supplement the care, guidance or control Junior obtained from his primary caretakers, but father failed to do so. Rather, father was so preoccupied with his own difficulties and interests that he left Junior's care to others.
Later, in February 1991, when he obtained an apartment and stabilized his life somewhat, father attempted unsuccessfully to parent Junior. Despite a network of support services, father proved to be an inept and abusive caretaker, who periodically acknowledged his inadequacy and unhappiness in the role of caretaker.
The court finds, by clear and convincing evidence, that the child, Junior, has been denied, by reason of act or acts of commission and omission by his father, the care, guidance or control necessary for his physical, educational, moral or emotional well-being. The period of father's unsuccessful CT Page 9062 caretaking covered some five months, followed by another five months when he ceased to visit the child. The court finds by clear and convincing evidence the totality of circumstances surrounding the child indicate that a waiver of the one-year requirement is necessary to promote the best interests of the child, and the court so waives.
 VII.
The statutory grounds for termination having been established, the court makes its findings as required by General Statutes 17a-112(d), all by clear and convincing evidence.
(1) DCYS and others have offered appropriate services in a timely manner. Following father's assuming primary care of the child in early 1991, services were provided by Family Support Services, Coordinating Counsel for Children in Crisis, the New Haven Family Alliance, the Social Work Department of Yale-New Haven Hospital, and Clifford Beers Clinic.
(2) Father participated in the custody evaluation ordered by the court on January 8, 1992.
(3) The child knows his father but appears alternately fearful of, or indifferent to him, not deeply attached to him.
The child has positive feelings toward his aunt Clara.
The child has positive feelings toward Katherine A., his former foster mother.
(4) Child is approximately 6 years, 9 months old.
(5) Father's contact with the child was sporadic from March 1986 until February, 1991. As noted, the child was in father's care from February to June, 1991. During July 1991, father visited weekly. From July 1991 until December 1991, father ceased his visits. He resumed weekly visits thereafter.
(6) Father has not been prevented from maintaining a meaningful relationship with this child by the unreasonable act or conduct of any person or by the father's economic circumstances.
VIII. CT Page 9063
The statutory basis for termination having been established and the required six findings made, the court must now determine whether termination of his father's parental rights is in Junior's best interests.
The court concludes that termination of father's parental rights is in the child's best interests.
Counsel for father argues strongly that petitioner seeks to terminate father's parental rights because of her belief that father's mental capacity is below average. (Brief for the Respondent, page 1). Acknowledging that father has a "mental deficiency" (Brief, page 7), counsel correctly points out that "by reason of continuing mental deficiency" is no longer a statutory ground for termination.
The court has found that this child, through acts of omission or commission by father, has been denied the care, guidance and control necessary for his physical, intellectual, educational and emotional well-being. One question the court must consider is whether to allow more time for further efforts to equip father to be a responsible parent. The court concludes that it would be unrealistic to expect father to acquire the ability to parent his son.
Dr. Barbara Berkowitz, a licensed clinical psychologist, states:
 "Lacking the intellectual and emotional capacities necessary for appropriate dealing with his son's behavior, he is likely to attempt to physically coerce the child into what he considers proper behavior. When the child cannot comply, there is a high risk of physical and emotional danger."
Dr. Berkowitz concluded: "In summary, Darnell D. is unlikely to become capable of adequate parenting in the near future."
Dale Galston, a psychotherapist, who treated the child, testified that she saw father as a "very threatening man" who displayed no warmth toward the child. She saw in father anger CT Page 9064 and lack of understanding. She concluded he lacked the capacity to care for this child.
The court finds this testimony, buttressed by that of DCYS worker Vasquez, to be persuasive. It is not that father's mental capacity renders him unfit; rather, his complex of intellectual, psychological and emotional characteristics render him unfit to parent and no amount of support is likely to equip him to parent adequately in the foreseeable future. The child has flourished in foster care and does not appear to be deeply attached to his father. The child has special needs which father is unable to comprehend, much less to meet. Junior is adoptable and his current foster family is interested in adopting him. He is in need of stability, permanence and understanding in his life. The court concludes by clear and convincing evidence that it is in Junior's best interests that his father's parental rights be terminated.
Accordingly, the parental rights of Darnell D. in and to his son, Darnell, Jr., are terminated, and the Commissioner of the Department of Children and Youth Services is appointed statutory parent for the purpose of arranging for Darnell, Jr.'s adoption.
The Commissioner is to report to the court within 90 days of this decision, pursuant to General Statutes 17a-112(c), and thereafter every twelve months until adoption is effected.
 IX.
Counsel for respondent father is appointed for the purpose of taking an appeal of this decision. Should said counsel decline to perfect an appeal, he is to notify the court and file a motion for Extension of Time pursuant to Practice Book 4040. A second attorney will be appointed to review the file on behalf of respondent. Should the second lawyer decline to perfect an appeal, that lawyer is promptly to notify respondent and the court. The clerk shall promptly notify respondent he is free to obtain counsel for the purpose of taking an appeal, which counsel may be appointed by the court.
John T. Downey, Judge CT Page 9065