[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter concerns a petition to terminate parental rights ("TPR") filed by the Commissioner of the Department of Children and Youth Services ("the Commissioner" and "DCYS"), on behalf of Jahli B. Jahli is a boy whose date of birth is December CT Page 9130 1988.
The petition was filed in August 1991. A motion on behalf of the maternal grandmother to be made an equitable party at interest for dispositional purposes was granted in early 1992.
The Commissioner's motion to amend the petition was granted in May 1992. A hearing on the petition as amended was held on that same date.
At the hearing testimony was heard from foster mother; licensed clinical psychologist; and DCYS social worker. By stipulation a child custody evaluation by another licensed clinical psychologist was admitted as a full exhibit.
 II.
The termination of parental rights is "a most serious and sensitive judicial action," In re: Jessica M., 217 Conn. 459 at 464, quoting from Anonymous v. Norton, 168 Conn. 421, 430,362 A.2d 532, cert. denied, 423 U.S. 935, 96 S.Ct. 294,46 L.Ed.2d 268 (1975). The interest of parents in their children is a fundamental constitutional right, In re: Jessica M., supra at 464. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. In re Jessica M., supra at 465, quoting from Santosky v. Kramer, 455 U.S. 745, 573, 102 S.Ct. 1388,71 L.Ed.2d 599 (1982).
To effectuate a non-consentual termination of parental rights a petitioner must prove first, by clear and convincing evidence, the existence of at least one of the statutory grounds for termination set forth in General Statutes 17a-112. If a statutory ground for termination is so established, the court must proceed to make the six written findings required by General Statutes, 17a-112(d) before moving on to determine whether termination is in the best interests of the child. At this dispositional sage, petitioner must prove by clear and convincing evidence that the termination sought is in the child's best interests. "Consideration of the best interests of the child cannot vitiate the necessity of compliance with the statutory criteria for termination." In re Jessica M., supra, at 465. In re Barbara J., 215 Conn. 31, 45. Nor can the court consider the CT Page 9131 availability of an appropriate adoptive home as bearing on the issue of establishing a statutory ground for termination: In re Jessica M., supra, at 466.
 III.
Jahli B. is the son of mother and an unknown father. Jahli was born in December 1988. Jahli tested positive for cocaine at birth. On discharge from the hospital in January 1989 he was placed in foster care, Jahli was placed with his maternal grandmother in November 1989 but was removed from her care by DCYS later that month and returned to foster care. Jahli regards foster parents as his parents and their twins as his siblings. He has no special needs and appears to be developing normally.
Jahli's mother is a drug addict and admitted prostitute. She has never acted as Jahli's caretaker. She has rarely visited Jahli, has not maintained contact with him or with Jahli's foster parents. Jahli does not recognize her as someone connected to him and has manifested no interest in nor positive feelings toward her. Clinical psychologist describes mother as "surely incompetent as a parent and not a suitable placement for any child." Mother makes no claim that she can parent Jahli. Rather, she offers her mother to act as the child's primary caretaker.
 IV.
The court finds, by clear and convincing evidence that Jahli has been abandoned by his mother and unknown father in that the parents have failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of this child.
By clear and convincing evidence, the child has been found to have been neglected and uncared for in November 1989, and mother and unknown father have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of this child.
Mother and unknown father are, and have always been non-custodial parents. They have never exercised the care, guidance or control necessary for Jahli's physical, educational CT Page 9132 moral or emotional well-being. As non-custodial parents their opportunities to do so are limited. Nevertheless mother and unknown father have utterly failed to avail themselves of the limited opportunities to exercise such care, guidance or control. By clear and convincing evidence, this child has been denied by reason of act or acts of commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional, well being. Foster parents have provided such care, guidance and control for this boy.
The court finds by clear and convincing evidence, that there is no on-going parent-child relationship between Jahli and his mother or between Jahli and his unknown father, by which we mean the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child, and to allow further time for the establishment of such parent-child relationships would be detrimental to the best interest of the child. There is no reasonable prospect that either parent will be fit to parent in the foreseeable future.
The court finds by clear convincing evidence, all the above-cited grounds for termination have existed for not less than one year.
 V.
The statutory grounds for termination having been established, the court makes the following findings, pursuant to General Statutes, Section 17a-112(d), all by clear and convincing evidence:
(1) DCYS stood ready to provide mother with visitation, but she rarely availed herself of such opportunity. DCYS arranged for visitation for maternal grandmother and provided transportation for several visits. DCYS suggested drug evaluation and treatment to mother several times, which resulted in one visit by mother to a drug treatment facility. As father is unknown and whereabouts unknown no services could be provided him.
(2) Mother attended a session of each (of 2) court-ordered evaluations.
(3) The child has no positive feelings or emotional ties toward his mother or unknown father. CT Page 9133
The child can identify maternal grandmother as "grandma".
The child has strong, positive emotional ties and feelings toward his foster parents. He views them as his parents.
(4) The child is approximately 3 years, 9 months old.
(5) Mother and unknown father have made no efforts to adjust their circumstances, conduct or conditions to make it in the best interest of Jahli to return him to either parent's home in the foreseeable future. The parents have not maintained contact with the child as part of an effort to reunite parents with child. Mother made several visits in the first half of 1989. The last visit was in December 1990. She called DCYS several times. The unknown father made no visits and neither parent contributed to the support of the child, neither remembered birthdays or holidays nor maintained communication with the foster parents.
(6) Neither parent has been prevented by the unreasonable acts or conduct of the other or by any other person from maintaining a meaningful relationship with the child, nor were they so prevented by their economic circumstances.
 VI.
The court must now determine, by clear and convincing evidence whether termination of the parental rights of Jahli's mother and unknown father is in the child's best interest. The court concludes that such termination is in Jahli's best interest.
Jahli's mother offers her mother as primary caretaker for Jahli. Maternal grandmother has been admitted as an equitable party at interest in these proceedings for dispositional purposes. Her participation in these proceedings derives from mother and her relationship to mother.
Maternal grandmother is the primary caretaker for mother's two older children. Grandmother was given consideration by DCYS as primary caretaker for Jahli following his birth. At the time of Jahli's discharge from the hospital grandmother was not in a CT Page 9134 position to take Jahli. Among the circumstances then obtaining she had lost her home to fire. The child was placed with the foster family. Grandmother was nonetheless seen as a potential caretaker. After some six months of consistent visits the child was placed with grandmother in November 1989. On this same date the child was adjudicated, neglected and uncared for and committed to the care and custody of the Commissioner of DCYS. This commitment was significant in that it reflected concerns of the Commissioner as to the suitability of grandmother as the primary caretaker of Jahli.
Some twenty days later, the DCYS worker determined that Jahli should be removed and DCYS removed the child and placed him again with foster parents.
DCYS worker testified that in November 1989 he discovered the child suffering from a severe ear infection; that the child appeared fearful of his grandmother; that DCYS worker observed a stranger, a man in the house, unknown to DCYS; further, grandmother had moved without notifying DCYS. Further, as background to DCYS' concerns, grandmother had previously voiced ambivalence over taking responsibility for the child, and had referred to Jahli as "demon-possessed."
From that point on grandmother's relationship with DCYS and with DCYS worker went from bad to worse. Grandmother deeply resented what she felt was an intrusion by DCYS. She resented and eventually rejected supervised visitation. She refused to participate in evaluations designed to assess her potential as caretaker for Jahli. She sought unsuccessfully to have DCYS worker replaced. She last visited Jahli in December in 1990 and thereafter refused to visit on DCYS terms.
Meanwhile, as has been indicated, supra Jahli has remained with his foster parents where he has flourished, has become part of the family and is happy. He is adoptable and have expressed the desire to adopt him.
To clinical psychologist, grandmother appeared to be "an unsuitable placement option for this child." He recommends that the child remain in the present foster home and be adopted there.
Second clinical psychologist, chosen by grandmother to do a second child custody evaluation, recommends that Jahli remain in his current foster home placement and that if parental rights are terminated and CT Page 9135 Jahli is adopted by his foster parents an open adoption be considered, with visitation for the maternal grandmother. Foster mother, it is noted, testified she wanted Jahli to know his grandmother and would allow visitation if Jahli was adopted by them.
One may agree with second clinical psychologist that it is unfortunate that efforts to establish a working rapport with grandmother to facilitate visits with her grandson were unsuccessful as a result of the conflict between grandmother and the DCYS worker.
But grandmother's misfortune is that she allowed her quarrel with DCYS to supercede and thwart reunion efforts, over an extended period of time. Now, as of the time of hearing, Jahli has close family ties with the foster family and hardly knows his grandmother. As second clinical psychologist concludes; "from the child's perspective his home is with the foster parents."
The court concludes, by clear and convincing evidence, that it is in Jahli's best interest that his parents' rights be terminated.
Accordingly the parental rights of mother and the unknown father in and to Jahli B. are terminated.
The Commissioner of the Department of Children and Youth Services is appointed statutory parent for the purpose of arranging for adoption. The Commissioner is directed to file the report required by Statute within 90 days of this decision and annually thereafter until adoption is effected.
Trial counsel for the mother and grandmother are appointed appellate counsel, should either party seek to take an appeal of this judgment. Should counsel decline to perfect such appeal because in his or her professional judgment it lacks merit, counsel is to file a timely motion to withdraw and a motion to extend the appeal period. Such motions, if unopposed, will be granted ex parte and a new attorney will be appointed to review the record. Should such new attorney decline to perfect an appeal, that attorney is to notify the court promptly, so the clerk of the court may notify the party of her right to secure counsel for an appeal, who, if qualified, may be appointed by the court.
John T. Downey, Judge CT Page 9135-A
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.]
CT Page 9136