IN RE GALEN F.*
(AC 18361)

Lavery, Schaller and Hennessy, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued January 12—officially released August 24, 1999

*Dale H. King*, for the appellant (respondent father).

*Kelly A. Flint*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Opinion*

HENNESSY, J. The respondent father[1] appeals from the judgment of the trial court terminating his parental rights with respect to his child. The respondent claims that the trial court improperly (1) found that there was clear and convincing evidence of the statutory grounds for termination of (a) failure to achieve rehabilitation, (b) no ongoing parent-child relationship and (c) abandonment and, therefore, improperly terminated his parental rights, and (2) admitted certain social studies as full exhibits in the adjudicatory phase. We affirm the judgment of the trial court.

---

[1] The trial court terminated the parental rights of both the respondent mother and the respondent father. The respondent mother has not appealed from that decision. We refer in this opinion to the respondent father as the respondent.

The following facts and procedural history are relevant to this appeal. The respondent's child was born on November 24, 1995. Following his birth, the child experienced respiratory distress and drug withdrawal as a result of the mother's using drugs during her pregnancy. On December 13, 1995, the trial court granted a request by the commissioner of children and families (commissioner) for an order of temporary custody of the child. Thereafter, on January 1, 1996, the child was adjudicated neglected and committed to the care of the commissioner. On October 4, 1996, the commissioner filed a petition for the termination of the parental rights of both parents. In the petition, the commissioner alleged the following statutory grounds for termination of parental rights: (1) abandonment by the parents because they failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; (2) failure to achieve personal rehabilitation since the finding of neglect; and (3) no on-going parent-child relationship.[2]

---

[2] The statute in effect in October, 1996, was the revision to 1995, as amended by Public Acts 1995, No. 95-238, Public Acts 1996, No. 96-130, and Public Acts 1996, No. 96-246. As amended, the statute was codified as General Statutes (Rev. to 1997) § 17a-112 (c). General Statutes (Rev. to 1997) § 17a-112 (c) provides in relevant part: "The Superior Court, upon hearing and notice . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence (1) that the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent . . . (2) that termination is in the best interest of the child, and (3) that over an extended period of time, which . . . shall not be less than one year . . . (A) The child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; (B) the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . (D) There is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-

With respect to the statutory grounds for termination of parental rights, the trial court found by clear and convincing evidence that "the parents have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time . . . the parents could assume a responsible position in the life of the child." The trial court also found that the parents "have no ongoing parent-child relationship" and that the parents have abandoned the child by failing "to maintain and demonstrate a consistent display of the indicia of interest, concern or responsibility for the welfare of the child that should be the hallmark of concerned parents."

While the grounds did not exist for more than one year prior to the filing of the petition, the trial court found that it was in the best interest of the child that the requirement be waived and terminated the parental rights of both parents.

The respondent appeals from the judgment of the trial court. Additional facts and procedural history will be discussed where relevant to the issues on appeal.

I

The respondent first claims that the trial court improperly found that the petitioner proved by clear and convincing evidence that the respondent failed to achieve personal rehabilitation, as required by the statute.[3] We disagree.

child relationship would be detrimental to the best interest of the child . . . ."

[3] The respondent also claims that the trial court improperly determined that the petitioner proved by clear and convincing evidence that there was no ongoing parent-child relationship and that the child was abandoned. "In a petition to terminate parental rights . . . the petitioner must list the grounds relied upon and, if any one of these grounds may be upheld, the order to terminate must stand." (Internal quotation marks omitted.) *In re Luis C.*, 210 Conn. 157, 170, 554 A.2d 722 (1989). Because we conclude that the trial court properly found that the petitioner proved by clear and convincing evidence that the respondent failed to achieve personal rehabilitation pursuant to § 17a-112 (c) (3) (B), we need not address these claims.

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child." (Citation omitted; internal quotation marks omitted.) *In re Roshawn R.*, 51 Conn. App. 44, 52, 720 A.2d 1112 (1998).

General Statutes (Rev. to 1997) § 17a-112 (c) provides in relevant part: "The Superior Court . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence . . . (3) that . . . (B) the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

"Personal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . In conducting this inquiry, the trial court must analyze the respondent's rehabilitative status as it relates to the needs of the particular child . . . . The trial court must also determine whether the prospects for rehabilitation can be realized within a reasonable time given the age and needs of the child. . . . Thus, the trial court's inquiry requires the determination of both the present and past status of the child, and obtaining a historical perspective of the respondent's child caring and parenting." (Citations omitted; internal quotation marks omitted.) *In re Tabitha P.*, 39 Conn. App. 353, 361, 664 A.2d 1168 (1995).

"The standard for review on appeal [from a termination of parental rights] is whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous." (Citations omitted; internal quotation marks omitted.) *In re Danuael D.*, 51 Conn. App. 829, 835–36, 724 A.2d 546 (1999). "On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *In re Christina V.*, 38 Conn. App. 214, 220, 660 A.2d 863 (1995).

In this case, the trial court found by clear and convincing evidence that "the child has previously been adjudicated neglected . . . and that the parents have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time . . . the parents could assume a responsible position in the life of the child." After reviewing the decision of the trial court and the whole record, we conclude that this finding is not clearly erroneous.

The child was born prematurely on November 24, 1995, suffering from drug withdrawal symptoms and remained in the hospital for treatment. The child has never been in the custodial care of either parent. On December 13, 1995, the trial court ordered temporary custody of the child to the commissioner. Thereafter, on January 1, 1996, the child was adjudicated neglected and committed to the care of the commissioner for a

period not to exceed one year. The respondent signed an agreement, with the advice of counsel, encompassing court expectations. The respondent agreed to keep all appointments set by the department of children and families (department), keep his whereabouts known to the department, participate in parenting classes, visit the child regularly, secure and maintain adequate housing, refrain from substance abuse and cooperate with substance abuse evaluation and follow recommendations flowing therefrom. During the period from January, 1996, until October, 1996, when the commissioner filed the petition to terminate parental rights against both parents, the respondent was tardy for or entirely missed several scheduled visitations, failed to secure adequate housing because he had to move on several occasions as a result of incidents of domestic violence and failed to attend the substance abuse evaluation program at community prevention and addiction services, missing all fifteen appointments arranged for by the department.

In April, 1996, the department created a plan for the respondent that would have increased his visitation with the child, required that he undergo a psychological and substance abuse evaluation and participate in parenting education. Thereafter, the respondent missed visitation appointments because he was incarcerated as a result of domestic abuse offenses and missed further appointments at community prevention and addiction services to the extent that they would no longer keep the respondent's file open. From August until October, 1996, when the petition to terminate parental rights was filed, the respondent did not keep the department apprised of his whereabouts. On the basis of that evidence, the trial court could have concluded that there was clear and convincing evidence that the respondent's child caring and parenting abilities were not such that would encourage the belief that the respondent

had assumed or could assume within a reasonable time, a responsible position in the life of this child. We conclude that the trial court's findings are not clearly erroneous, are legally correct and support the fact that the respondent has not achieved personal rehabilitation.

During the dispositional phase of the hearing, the evidence must show by a clear and convincing standard that the continuation of the respondent's parental rights is not in the best interest of the child. In arriving at that decision, the trial court is mandated to consider and make written findings regarding seven factors delineated in General Statutes (Rev. to 1997) § 17a-112 (e), now § 17a-112 (d).

In its written opinion, the trial court made detailed findings as to the disposition, pursuant to § 17a-112 (e). The trial court found that the department provided appropriate and timely services including substance abuse and individual counseling, transportation assistance, visitation coordination and made reasonable efforts to reunify the family. In addition, the trial court found that the department set reasonable expectations in order to reunify. The trial court further found that the respondent was unwilling or unable to visit the child on a regular basis because of a lack of personal initiative or due to his incarceration and failed to comply to a significant degree with the court approved expectations set forth after the child was found to be neglected and committed to the custody of the commissioner. The court further found that the child has strong emotional ties with the foster family and no positive emotional ties with the biological parents and was found by the court-appointed psychologist to have an aversive, parent-specific, negative reaction to the respondent.

The court also found that the child is two years old, has not been in the care of the respondent since birth, has not been offered nor can be provided a secure home

by the respondent and is residing with foster parents who have offered the child a permanent home. The respondent has not made realistic and sustained efforts to conform his conduct to acceptable parental standards, evidenced by his failure to maintain a relationship with the child by not taking advantage of available visitation opportunities and acting in a manner that resulted in incarceration, thereby removing himself from access to the child. The respondent has not been prevented from maintaining a meaningful relationship with the child by the act or conduct of others or by his economic circumstances. He has by his own conduct prevented himself from maintaining a meaningful relationship with the child by not taking advantage of the liberal visitation schedule, by not establishing a suitable home, by engaging in conduct which resulted in his being in prison thereby absenting himself from the life of the child and doing little or nothing to correct that within his life that would have conformed his conduct to acceptable parental standards. See *In re Hector L.*, 53 Conn. App. 359, 367–68, 730 A.2d 106 (1999) (incarcerated respondent could not avail himself of rehabilitative programs available through department because of his incarceration, but that did not excuse failure to use resources offered by department of correction). The child, born in November, 1995, has not resided with the respondent, who is presently incarcerated and will need further drug rehabilitation upon his release from prison. The child presently is in a secure, stable environment and it is not clear when the respondent will be in a position to assume a responsible position in the child's life.

Upon reviewing the decision of the trial court and the evidence contained in the record, we conclude that the trial court's findings are not clearly erroneous, are legally correct and support the fact that the respondent has not rehabilitated himself and that it is in the best

interest of the child that the respondent's parental rights be terminated.

## II

The respondent next claims that the trial court improperly admitted, in the adjudicatory phase, a series of social studies that were prepared in connection with the filing of petitions for the termination of parental rights with respect to both parents. Specifically, the respondent argues that § 17a-112, which sets forth the grounds for the termination of parental rights, is to be strictly construed and does not mention social studies or their admissibility. The respondent further argues that Practice Book § 33-5[4] mandates that a social study be conducted and made an exhibit. He claims that the trial court's reliance on the social study to conclude that he had been arrested for possession of marijuana, failure to appear, criminal mischief, assault and several burglaries and larcenies, breach of the peace and possession of drug paraphernalia was prejudicial. We disagree.

Practice Book § 33-3 provides in relevant part: "(a) In the adjudicatory phase, the judicial authority is limited to events preceding the filing of the petition or the latest amendment.

"(b) In the discretion of the judicial authority, evidence on adjudication and disposition may be heard in a non-bifurcated hearing, provided disposition may not be considered until the adjudicatory phase has concluded. . . ." Practice Book § 33-5 provides in relevant part that "no disposition may be made by the judicial

[4] Practice Book § 33-5 provides: "The judicial authority may admit into evidence any testimony relevant and material to the issue of the disposition, including events occurring through the close of the evidentiary hearing, but no disposition may be made by the judicial authority until any mandated social study has been submitted to the court. Said study shall be marked as an exhibit subject to the right of any party to require that the author, if available, appear for cross-examination."

authority until any mandated social study has been submitted to the court. Said study shall be marked as an exhibit subject to the right of any party to require that the author, if available, appear for cross-examination." In *In re Tabitha P.*, this court held that the trial court is not precluded from considering material in social studies, submitted pursuant to Practice Book § 1043.1, now § 33-5, in the adjudicatory phase of the hearing, even when the social study is prepared after the filing of the petitions, provided that the events considered did not occur after the petition date. *In re Tabitha P.*, supra, 39 Conn. App. 368.

The trial court stated in its written opinion that the respondent, by stipulating to only the offenses listed on the exhibit, attempted to keep the court "in the dark" as to his complete criminal history. The trial court further stated that it "knows from the unchallenged findings of [the court-appointed clinical psychologist] and representations contained in the social study that [the respondent's] criminal history includes more than ten arrests for possession of drug paraphernalia, burglary, larceny, failure to appear charges and breach of the peace."

The respondent does not argue that those arrests did not occur or that any of the arrests happened after the petitions were filed. Instead, the respondent claims that the trial court's reliance on inadmissible hearsay in the social study to conclude that the he had been arrested for possession of marijuana, failure to appear, criminal mischief, assault and several burglaries and larcenies, breach of the peace and possession of drug paraphernalia was prejudicial because the trial court further found that his criminal history prevented the respondent from having a relationship with the child.

We note that the petitioner and the respondent stipulated to the admission of a partial list of the respondent's official record that showed that the respondent had

four arrests between January 3 and June 19, 1996. The charges included possession of drug paraphernalia, breach of the peace, failure to appear and a probation violation.

"When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . One factor to be considered in determining whether an improper ruling on evidence is a harmless error is whether the testimony was cumulative . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Rolli*, 53 Conn. App. 269, 276, 729 A.2d 245, cert. denied, 249 Conn. 926, 733 A.2d 850 (1999). The social study was cumulative to the overall evidence from which the court could reasonably have found that the respondent failed to take advantage of the opportunities he had for liberal visitation with the child. The trial court could have found from the stipulated evidence that the respondent's criminal history prevented him from having an ongoing relationship with the child. We conclude, therefore, that the trial court did not improperly admit the social studies as full exhibits.

The judgment is affirmed.

In this opinion the other judges concurred.