[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I. FACTS
On August 3, 4, and 11, 2000, a trial was held on the coterminous petition filed with regard to Tamara M., a sixteen month old girl who currently resides in a Department of Children and Families (hereinafter CT Page 11963 referred to as DCF) licensed medically fragile foster home.
The Respondent Mother, Tammy M., is the biological mother of four children. The oldest of her children, Cecila M. was removed from her mother's care shortly after birth and was placed with her paternal grandparents in Maine where she remains today.
The second child born to Respondent Mother is Alex M. The Department provided numerous services to Respondent Mother in connection with Alex, including: individual counseling, parent aide services, visitation, transportation, parenting classes, intensive family preservation, and a placement at a residential living facility called My Sister's Place. The Respondent Mother failed to take advantage of these services. She missed a significant portion of the visitation that was offered to her. A Termination of Parental Rights Trial was held in Middletown wherein the court (Rogers, J.) terminated the parental rights of Tammy M. with respect to Alex M. and appointed DCF as Statutory Parent.
The third child, Tamara M. is the subject of the present coterminous petition. She was born on May 1, 1999. After her birth the Respondent Mother and the infant lived in a motel. In July, 1999 Respondent Mother was involved in a violent altercation with two men. The subject of the brawl was a dispute over a fishing pole. Respondent Mother was holding Tamara in her arms during this incident. At some point in the conflict Tamara was struck in the head by one of the combatants and received medical attention at the Danbury Hospital Emergency Room.
As a result of this incident the trial court granted an order of temporary custody (hereinafter referred to as OTC) on July 21, 1999. Tamara was later returned to her mother's care. Thereafter, this court granted another OTC on November 12, 1999 after Tamara had been found in a filthy and foul-smelling condition, her face crusted with mucus. She required more treatment at the Danbury Hospital Emergency Room. Tamara has been in a DCF licensed medically fragile foster home since the removal from her mother's care in November of 1999. On June 7, 2000, after a default hearing, the court terminated Respondent Father's parental rights.
The fourth child is Troy M. Each of the children have a different biological father. Tammy M. refuses to disclose either the identity of, or the address of Troy's father.
Dr. Ralph Welsh, the court-appointed evaluator, testified that the Respondent Mother suffered from severe deficits as a parent, and the Court finds this to be the case by clear and convincing evidence. Dr. Welsh conducted four evaluations of the Respondent Mother over a span of CT Page 11964 approximately eighteen months. He administered two standardized intelligence tests. Both tests revealed that the mother was in the "borderline retarded" range of general intelligence. Dr. Welsh opined that the mother functioned at approximately the mental age of a nine year old. In addition, Tammy M. has a severe personality disorder which is not susceptible to treatment through therapy or through medication. Dr. Welsh, in the course of the four separate evaluations, identified a number of deficits in the mother's parenting ability, including impulsivity, anger management problems, lack of ability to emotionally bond with her children and lack of insight. He further found that Tammy M. had profoundly flawed judgement. She made no progress during the period of time in which he followed her case from May 29, 1997 to December 4, 1998. The deficits he noted were not correctable through training. Respondent Mother has previously been hospitalized for suicidal and homicidal ideation. The court finds, along with Dr. Welsh, that Respondent Mother would not be able to safely assume a parental role with respect to Tamara.
DCF offered the Respondent Mother numerous services in order to help her to rehabilitate as a parent with respect to Tamara. Subsequent to Dr. Welsh's evaluations, several court ordered evaluations were scheduled. The Respondent Mother refused to participate in the scheduled evaluations.
Tammy M. was offered individual counseling at Danbury Youth Services. After two intake interviews, she refused to participate in therapy. Her case was terminated for lack of attendance. During her brief exposure to the Respondent Mother, her therapist, Yvette Jarreau observed that the respondent Mother had "unrealistic expectations" of the baby's physical abilities and showed impatience in her interactions with Tamara.
Tammy M. was provided with a parent aide on September 22, 1999 to assist her with interaction parenting skills, education, and job training. Respondent Mother was resistant to suggestions about general parenting skills, education, housing, and mental health services. During the period of time in which the Department provided services in connection with Tamara, the Respondent Mother ceased cooperation with all service providers.
DCF made arrangements for Respondent Mother to live with Tamara in a structured long term living environment called Amos House. She refused to enter this program. She also refused to participate in the Even Start Family Literacy Program in order to pursue her GED. She failed to attend any of her scheduled visitations with Tamara. She told the social worker that she wanted to avoid becoming attached to Tamara because she feared that DCF would terminate her parental rights with respect to Tamara just CT Page 11965 as it had done with respect to Alex. Respondent Mother has not visited with Tamara since the child was removed from her custody in November, 1999.
Tamara has been diagnosed as a failure to thrive baby. Her weight level is of constant concern to the foster mother. She requires an intensive schedule of frequent feedings. She has difficulties in feeding and demonstrates very high activity level. Due to her unusually high activity level Tamara requires constant monitoring and vigilance to ensure her safety.
II. LAW
 A. Neglect/Uncared For Petition
Pursuant to C.G.S. Section 46B-120 et. seq. A child maybe found to be "neglected" if that child is being denied proper care and attention physically, educationally, emotionally or morally, or is being permitted to live under conditions, circumstances or associations injurious to her well-being. The standard of proof is a fair preponderance of the evidence, which must be established by the Department of Children and Families. Darrow vs. Fleischner, 117 Conn. 518, 169 A. 147 (1933).
The Court finds that there is a plethora of evidence to establish by a fair preponderance that Tamara M. was neglected. In July 1999 Tamara required emergency room attention when her mother exposed her to a dangerous situation involving two men who were fighting. In November of 1999 Tamara was found to be foul smelling and filthy. Her face was crusted with mucus. The child required medical attention at Danbury Hospital for untreated conjunctivitis and a double ear infection. The Respondent Mother was living in a dwelling with the combatants of the brawl in violation of a court restraining order. Respondent Mother admitted feeding Tamara whole cow's milk diluted by water, deemed totally inappropriate by Tamara's pediatrician. The petitioner has met its burden of proof. The Court is convinced that Tamara M. was neglected and uncared for by Respondent Mother.
B. Termination of Parental Rights
The termination of parental rights is defined as "the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and the child's parent or parents, so that the child is free for adoption. C.G.S. Sec. 45a-707 (8) "Its is a most serious and sensitive judicial action." Anonymous v.Norton 168 Conn. 421, 430, 362 A.2d 532 cert. denied, 433 U.S. 935, 965, CT. 294, 46 L.Ed.2d 268 (1975). In Re Michael M. 29 Conn. App. 112, CT Page 11966 117-18, 614 A.2d 832 (1992).
When petitioning to terminate parental rights without consent, the Department of Children and Families must allege and prove by clear and convincing evidence one or more of the specific grounds set forth in Connecticut General Statutes Section 17a-112 (c) et. seq. In Re Baby GirlB 224 Conn. 263, 293, 618 A.2d (1992). "The same evidence certainly can establish more than one ground for termination. "In re Shannon S.41 Conn. Sup. 145, 157, 562 A.2d 79, aff'd, 19 Conn. App. 20, 560 A.2d 993
(1989).
1. Pursuant to C.S.C. Section 17a-112 (c) the court finds by clear andconvincing evidence that the Department of Children and Families has madereasonable efforts to locate the parents and reunify the parents with thechild.
The father was duly noticed and defaulted in the termination proceedings. His rights have previously been terminated. The mother has been involved with the Department for several years. She was offered numerous services and the Department made reasonable efforts to reunify her with Tamara.
2. Abandonment
Conn. General Statutes Sec. 17a-112 (c)(A) provides that the parental rights of a parent may be terminated, if, inter alia, "the child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child." The present TPR petition was filed on February 22, 2000. From the time the child was removed in November 1999 until the filing of the TPR petition, the Respondent Mother failed to visit or have any contact with the minor child. In addition, the Respondent Mother chose not to attend a treatment plan conference that was held during this period, in which she could have participated in the Department's plan to provide for services and reunification. Throughout the subject time, there was only one phone call to inquire of Tamara's welfare. Respondent Mother's previously referenced statement to the social worker indicates a conscious decision on her part not to have any contact with her child for this period of time. For these reasons, the Court finds by clear and convincing evidence that Respondent Mother failed to maintain a reasonable degree of interest, concern or responsibility as the welfare of Tamara. The ground of abandonment has been proven by the petitioner.
3. Failure to Rehabilitate
Conn. General Statutes Sec. 17a-112 (c)(E) provides that the rights of CT Page 11967 a parent may be terminated if the parent of a child under the age of seven years who is neglected or uncared for, is unable or is unwilling to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child and such parent's parental rights of another child were previously terminated pursuant to a petition filed by the Commissioner of Children and Families.
This Court took Judicial Notice of the fact that the Respondent Mother's parental rights to Alex M. were terminated after a contested hearing at the Child Protection Session in Middletown. Tamara is under the age of seven years and the Court has already found that she was neglected and uncared for. Therefore, the only requirement that must be met is the question of personal rehabilitation.
"Personal rehabilitation as used in the statutes refers to the restoration of a parent to his or her former constructive and useful role as a parent . . . In conducting this inquiry, the trial court must analyze the respondents rehabilitative status as it relates to the needs of the particular child . . . The trial court must also determine whether the prospects for rehabilitation can be realized within a reasonable time given the age and needs of the child . . . Thus, the trial court's inquiry requires the determination of both the present and past status of the child, and obtaining a historical perspective of the respondent child caring and parenting." In Re Tabitha P., 39 Conn. App. 353, 361,664 A.2d 1168 (1995); In Re Galen F. 54 Conn. App. 590, 594, 737 A.2d 499
(1999).
Dr. Welsh testified that the Respondent Mother's parenting deficits are not correctable through training. Indeed, she was offered a vast array of services to give her the ability to assume a parental role with regard to Tamara, including: parent aide, intensive family preservation services visitation, transportation, individual counseling, services through Threshold Emergency Shelter, Amos House, Even Start Family Literacy Program, and psychological evaluations. She failed to take advantage of these services. Her conduct demonstrates that she is unwilling to benefit from services.
The Court, pursuant to statute, must not only consider whether the parent can rehabilitate within a reasonable period of time, but also the age and needs of the child. Infancy of a child in and of itself dictates that the child requires a high level of care. See In Re Carol O.,10 Conn. App. 428, 435-36, 523 A.2d 1339, cert. denied, 204 Conn. 802
(1987). As a medically fragile child with a failure to thrive diagnosis, Tamara has extraordinary needs. Dr. Welsh opined that this mother CT Page 11968 could not rehabilitate sufficiently to parent a child with ordinary needs. Given the extraordinary needs of Tamara, it is not foreseeable that Respondent Mother will ever be able to assume a responsible position in the life of Tamara, certainly not within a reasonable period of time. Petitioner has met its burden of proof in that regard.
4. Reasonable Efforts
Conn. General Statutes Sec. 17a-112 (c)(1) requires a showing that DCF has made reasonable efforts to reunify parent and child unless the parent is unable or wilting to benefit from reunification efforts. "Reasonable efforts means doing everything reasonable, not everything possible." InRe Antonio M., 56 Conn. App. 534, 546, 744 A.2d 915 (2000).
The Department offered Respondent Mother numerous services after Tamara s birth. Among the many services offered were: parent aide services, intensive family preservation, visitation, transportation, individual counseling, services through Threshold Emergency Shelter, Amos House, Even Start Family Literacy Program and psychological evaluations. Respondent Mother rejected all of the Department's offers and services. The Court finds that not only were the Department's efforts to reunify reasonable, but also that Respondent Mother was unwilling to benefit from reunification efforts.
5. Best Interests of Child
Conn. General Statutes Sec. 17a-112 (d) requires that the Court consider and make written findings regarding the following seven factors. The Court finds these factors were proven by clear and convincing evidence, (a) Timeliness, nature and extent of servicesoffered provided and made available to the parent and the child by anagency to facilitate the reunion of the child with the parent.
As described above, numerous services were offered to Respondent Mother. She was unwilling to participate in any of the services offered.
(b) Whether the Department of Children and Families has made reasonableefforts to reunite family pursuant to the Federal Adoption Assistance andChild Welfare act 1980 as amend.
Reasonable efforts were made by the Department as enumerated above. It is unfortunate that Respondent Mother did not avail herself of the services offered.
(c) The terms of any applicable court order entered into and agreedupon by any individual or agency and the parent. and the extent toCT Page 11969which all parties have fulfilled their obligation under such order.
On August 4, 1999, Judge Munro signed specific steps. The Respondent Mother violated virtually every specific step that was ordered. She failed to keep appointments set with DCF, she failed to keep her whereabouts known to DCF; she failed to participate in individual counseling; she refused to accept and cooperate with support services and make progress toward identified treatment goals; she failed to purse her GED and to cooperate with the court ordered psychological evaluation.
(d) The feelings and emotional ties of the child with respect to thechild's parents. any guardian of such child's person and any personwho has exercised physical care. custody or control of the child for atleast one year and with whom the child has developed significantemotional ties.
Tamara's foster parents have cared for her since November, 1999 and she has a strong attachment to them. In view of the fact that Tamara has had no contact with her mother since November 1999, she has no emotional connection with her biological mother.
(e) The age of the child
Tamara M. was born on May 1999.
(f) The efforts the parent has made to adjust such parentscircumstances, conduct, or conditions to make it in the best interest ofthe child to return such child home in the foreseeable future,including. but not limited to. (A) the extent to which the parent hasmaintained contact with the child as part of an effort to reunite thechild with the parent. provided the court may give weight to incidentalvisitations, communications or contributions and (B) the maintenance ofregular contact or communication with the guardian or other custodian ofthe child.
The Respondent Mother has declined to participate in counseling. She has been resistant to help that was offered from parent aides, DCF and Threshold Emergency Shelter staff to improve her level of parenting. There has been no contact between the biological mother and Tamara since her removal in November of 1999. The Respondent Mother has been uncooperative with various service providers. She has made no efforts to adjust her circumstances to facilitate a reunion with her daughter.
(g) The extent to which a parent has been prevented from maintaining ameaningful relationship with the child by the unreasonable act or conductof the other parent of the child, or the unreasonable act of any otherCT Page 11970person or by the economic circumstances of the parent.
The Respondent Mother had every opportunity to maintain a relationship with her child. She was offered a magnitude of services and refused to participate in any of them. Further, she decided to abandon her relationship with Tamara by rejecting the visitation that was offered to her. There is no evidence that Respondent Mother was prevented from maintaining a meaningful relationship with Tamara by the unreasonable action of another person or by economic circumstances.
The factors to be considered in assessing the best interest of the child include: (1) the length of stay with a non-parent, (2) the nature of the relationship to the non-parent, (3) the degree of contact maintained with the natural parent; and (4) the nature of the relationship with the natural parent. In Re Juvenile Appeal, 177 Conn. 648,663 (1979). Tamara requires a permanent safe and stable environment in which to grow. The Respondent Mother cannot provide such an environment now and will not be able to provide such an environment in the foreseeable future. "Termination has been consistently recognized as being in the best interest of the child when the parent has a mental deficiency or illness which renders her unable to provide the child with necessary care." In Re Nicolina T., 9 Conn. App. 598, 605, 520 A.2d 639
cert. denied, 203 Conn. 804, 525 A.2d 519 (1987).
Tamara has been with her foster parents since November, 1999. She has developed a close emotional tie with them. Respondent Mother has not had any contact with Tamara since November, 1999. Tamara has no relationship with her biological mother.
The failure of the Respondent Mother to participate in services or even to acknowledge the need for such services demonstrates her unwillingness to rehabilitate. The best interests of Tamara M. require that the parental rights of Tammy M. be terminated.
III. CONCLUSION
Based upon the foregoing, the Court finds that by a fair preponderance of the evidence, Tamara M. was neglected and uncared for. Further, the Court finds by clear and convincing evidence that the adjudicatory grounds for termination have been established. The Court finds by clear and convincing evidence that the best interests of the child require termination of the Respondent Mother's parental rights. Wherefore, it is hereby ordered that the Parental Rights of Tammy M. to her child Tamara M. are hereby terminated, and the Department of Children and Families is appointed as statutory parent of Tamara M. CT Page 11971
By The Court
Eveleigh, J.