[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
1. FACTS
On October 10 and 31, 2001 a trial was held on the co-terminus petition filed by the Department of Children and Families (hereinafter referred to as DCF) with regard to Troy M., a sixteen month old boy who currently resides in a DCF foster home.
The Respondent Mother, Tammy M. is the biological mother of four children and is currently expecting her fifth child. The oldest of her children, Cecila M. (DOB 2/21/95), was removed from her mother's care shortly after birth and was placed with her paternal grandparents in Maine where she remains today.
The second child born to Respondent Mother is Alex M. (DOB 12/3/96). The Department provided numerous services to Respondent Mother in connection with Alex, including: individual counseling, parent aide services, visitation, transportation, parenting classes, intensive family preservation, and a placement at a residential living facility. The Respondent Mother failed to take advantage of these services. She missed a significant portion of the visitation that was offered to her. A Termination of Parental Rights Trial was held in Middletown wherein the CT Page 14957 Court (Rogers, J.) terminated the parental fights of Tammy M. with respect to Alex M., and appointed DCF as Statutory Parent. In her decision, Judge Rogers noted among other reasons, that Tammy M. in had missed a significant portion of the visitation with Alex and she did not have a stable housing situation.
The third child born to Tammy M. is Tamara M. born on 5/1/99. On 9/29/00 this Court (Eveleigh, J.) terminated the parental fights of Tammy M. with regard to her daughter Tamara M. The mother had not visited the child for ten months prior to the termination. She had also subjected her child to injury due to a violent altercation between two men. Her housing was transitory and her relationships were unstable.
The fourth child, Troy M. born 6/00, is the subject of the instant petition. DCF has based its petition on the doctrine of predictive neglect together with the mother's refusal to participate in services. Further, DCF alleges mother's transient life style and information that the homes where the child lived contained deplorable conditions. In addition, there were reports that the mother had not bathed the child and failed to keep medical appointments for the child. The child was removed from the mother's care on October 10, 2000 on the basis of a bench OTC issued by this Court. Since that time, the mother has visited consistently with the child, has lived in the same home for over one year, and is engaged to be married on February 14, 2002 to the father of the child she is expecting.
II. LAW
A. Neglect/Uncared For Petition
Pursuant to C.G.S. Section 46b-120 et. Seq. A child may be found to be "neglected" if that child is being denied proper care and attention physically, educationally or morally, or is being permitted to live under conditions, circumstances or associations injurious to his well-being. The standard of proof is a fair preponderance of the evidence, which must be established by DCF. Darrow vs. Fleischner, 117 Conn. 518, 169 A. 147
(1933).
The Court finds that DCF has proven by a fair preponderance of the evidence that Troy M. was neglected and uncared for. The mother's history at the time of petition is enough to invoke the doctrine of predictive neglect. In RE Michael D. 58 Conn. App. 119. In addition, after Troy's birth the mother had agreed to accept the VNA services, and also services from Intensive Family Preservation. She was residing in a one-bedroom apartment with two other adults. She eventually refused to participate in the services and left her residence. She did not bathe the baby for a CT Page 14958 week. On October 10, 2000 a bench OTC was issued and the baby was removed from his mother's care.
B. Termination of Parental Rights
The termination of parental rights is defined as "the complete severance by Court order of the legal relationship, with all its rights and responsibilities, between the child and the child's parent or parents, so that the child is free for adoption. C.G.S. SEC. 45a-707 (8) "It is a most serious and sensitive judicial action." Anonymous vs.Norton, 168 Conn. 421, 430, 362 A.2d 532 Cert. Denied, 433 U.S. 935, 965, S.Ct. 294, 46 L.Ed.2d 268 (1975). In RE Michael M. 29 Conn. App. 112,117-18, 614 A.2d 832 (1992).
When petitioning to terminate parental rights without consent, DCF must allege and prove by clear and convincing evidence one or more of the specific grounds set forth in Connecticut General Statutes Section 17a-112
(c) et. Seq. In RE Baby Girl B 224 Conn. 263, 293, 618 A.2d (1992).
Its is axiomatic that in order for a Court to terminate the rights of a parent the Court must find, pursuant to Conn. General Statutes Section17a-112 (c)(E), that the parent of a child under the age of seven years who is neglected or uncared for, is unable or is unwilling to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child and such parents' parental rights of another child were previously terminated pursuant to a petition filed by DCF.
This Court has taken judicial notice of the fact that the mother's parental rights have been terminated to her children Alex M. and Tamara M. Troy is under the age of seven years and the Court has already found that he was neglected and uncared for. Therefore, the only requirement that must be met is the question of personal rehabilitation.
"Personal rehabilitation as used in the statutes refers to the restoration of a parent to his or her former constructive and useful role as a parent. In conducting this inquiry, the Court must analyze the respondent's rehabilitative status as it relates to the need of the particular child. The Court must also determine whether the prospects for rehabilitation can be realized within a reasonable time given the age and needs of the child. Thus, the trial court inquiry requires the determination of both the present and past status of the child, and obtaining a historical perspective of respondent child caring and parenting. In RE Tabitha P. 39 Conn. App. 353, 361, 664 A.2d 1168 (1995);In RE Galen F. 54 Conn. App. 590, 594, 737 A.2d 4999 (1999). It should CT Page 14959 also be noted that in the case of young mother such a Tammy M. who is 22 years of age, whether or not she has matured substantially and altered her life style from the time that her parental rights were previously terminated, are subjects for consideration by the Court.
DCF argues that Tammy M. cannot become an effective parent without the services which she has refused over the years. Dr. Martinez, it argues, testified that Tammy M. should have constant supervision in the care of a child, and that with that supervision it may take two to three years before she could effectively parent a child. However, Respondent Mother presented testimony to the effect that she has lived in the same house for more than one year. There are presently nine people in the house which contains a total of 13 rooms and seven bedrooms. She is engaged to be married. She has visited constantly with her baby. Two people from the household testified to her abilities as a mother. They felt that the care she gave to Troy before he was removed from the house was appropriate. They testified that Troy was always clean, well feed and had plenty of clothing. One of the witnesses felt that Tammy was an excellent mother who was very good with her two children.
The court notes that Dr. Martinez has not examined Tammy M. since January 11, 2001 and was not familiar with the recently stability in her life. The court is confronted with the difference in proof required in a termination case, compared to a neglect case, because the court must find in a termination that DCF has proven its case by clear and convincing evidence. Several factors currently weigh against this Court reaching that requisite conclusion. First, unlike the prior cases, Tammy M. has displayed a great interest in visitation with this child. Her visitation has been consistent and she has visited with the child, as DCF would permit, on a weekly basis. In the prior termination cases, her visitation with her child was sporadic, and with Tamara M. she did not visit for a period of over ten months. Second, her home life is constant. She does not have the transient life style that existed at the time of the prior terminations. She is currently in the home of her future mother-in-law, Mrs. S. who is home with Tammy most of the day and does not work. She has indicated that Tammy is always welcome to stay in her house. It should be noted that Mrs. S. was previously licensed as a DCF foster mother in the 1970's. Third, she is engaged to be married on February 14, 2002. The period of instability with various boyfriends who placed her children at risk is no longer evident. Fourth, the Court has noted her interest in this case. She has appeared at all recent court hearings and recent DCF Administrative Reviews, unlike prior cases when she rarely appeared at the court hearings. All of these facts demonstrate to the court that there is a level of maturity within Tammy M. which did not exist in the prior cases. Although it would be ideal for her to have engaged in all of the services which DCF required, there is a level of distrust that has CT Page 14960 developed due to the prior cases, that makes cooperation between the pates difficult, if not impossible. Given the totality of the circumstances, the Court finds that Tammy M. has displayed a level of rehabilitation such that DCF has not proven by clear and convincing evidence that she cannot rehabilitate within a reasonable period of time to assume a responsible position in the life of her child Troy M. Therefore, the Court will not terminate the parental rights of Tammy M. with respect to Troy M. and rules in favor of the Respondent Mother.
With respect to the Father Chris S. the Court makes the following findings by clear and convincing evidence. DCF has made reasonable efforts to locate Mr. S. Mr. S. has abandoned Troy M. He has shown no interest in the welfare or support of the child. There is no evidence to suggest that he would ever desire to assume a responsible position in the life of Troy M. He does not wish to benefit from reunification efforts. DCF has been willing to offer him services and make an attempt to unite him with his child. He has failed to appear in Court or take advantage of any services. There are no emotional ties between Mr. S. and Troy M. Troy M. was born on June 2000. Mr. S. has not made any efforts to be a part of Troy M. life. He has not been prevented by anyone from developing a relationship with his child. Therefore, the Court finds that it is in the best interest of Troy M. to terminate the parental rights of Chris S. with respect to Troy M.
III. CONCLUSION
Based upon the foregoing, the Court finds by a fair preponderance of the evidence that Troy M. was neglected and uncared for. The Court further finds that DCF has proven by clear and convincing evidence that the parental rights of Chris S. with regard to Troy M. should be terminated and the Court hereby orders that said rights are terminated. However, the Court further finds that DCF has not met its burden of proof for termination with respect to Tammy M. and the Court refuses to terminate her parental rights with respect to Troy M. Therefore, the Court orders that Troy M. be committed to the Department of Children and Families until further order of the Court. The plan is reunification of Troy M. with his mother. In the interim, it is ordered that Tammy M. have visitation with Troy M. every Saturday from 10 to 4. DCF is to provide a parent aide to assist Miss M. during these visits and Miss M. is ordered to cooperate with the parent aide. The Saturday visitation is to commence on Saturday, November 17, 2001. This Court will conduct an In Court Review on February 17, 2002. If there has been full compliance with the Court Order and the house conditions are acceptable, the mother shall have weekend visitation with the child from 5:00 p.m. on Fridays until 5:00 p.m. on Sundays without a parent aide. If there has been full compliance with the visitation, the Court will consider the circumstances CT Page 14961 of Miss M. and hear a Motion to Revoke the
Commitment on August 6, 2002 at 2:00 p.m.
So Ordered
Hon. Dennis Eveleigh